**Joe Rollen CROCKETT,**
**Petitioner-Appellant,**

v.

**O.L. McCOTTER, Director, Texas**
**Department of Corrections,**
**Respondent-Appellee.**

**No. 85–1312.**

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1986.

Cribbs & McFarland, Jay Francis Whittle, Jr. (Court appointed), Jeff Whittle, Arlington, Tex., for petitioner-appellant.

Daniel Zemann, Jr., Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, POLITZ and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Joe Rollen Crockett was sentenced to life imprisonment in 1980 by a Texas jury after he pleaded guilty to burglary. Crockett now appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254 in which he challenged his sentence, claiming that he received ineffective assistance of counsel because of his counsel's failure to object to the introduction of four prior convictions. We affirm the district court's denial of habeas relief.

**Facts and Proceedings Below**

On the night of January 12, 1980, Crockett broke into an apartment in Garland, Texas occupied by Roger Tidwell and Debbie Tidwell, his ten-year-old daughter from a previous marriage. Crockett entered the bedroom where Debbie and her father were sleeping. According to Debbie Tidwell's testimony at trial, Crockett then pulled down her pajama bottoms, laid on top of her while she was in a prone position, and "moved up and down." She testified that she felt "squashed." Crockett eventually left the Tidwell residence, taking with him several coats. As Crockett was leaving, Roger Tidwell, who was sleeping in the same bed with Debbie, woke up and caught a glimpse of Crockett. Tidwell knocked on his next-door neighbor's door, and with his neighbor's help he apprehended Crockett approximately five blocks away. The police were called and they arrested Crockett.

Pursuant to a plea bargain, the only crime with which Crockett was charged was burglary of a habitation, a first degree felony, to which he pleaded guilty. *See* Tex.Penal Code § 30.02(d)(1). A jury was empaneled to fix punishment, which under Texas law could have been anywhere from five to ninety-nine years or life imprisonment. Tex.Penal Code 12.32(a) (Vernon Supp.1986). Under the plea bargain, no enhancement of Crockett's sentence was sought despite his previous convictions.

At the subsequent sentencing trial, the prosecution presented the following evidence to the jury. First, there was evidence that a knife was used in the burglary

in that a kitchen knife was found on Debbie's side of the bed. Second, a medical examination taken after the burglary revealed that Debbie had not been raped since there was no penetration, but seminal fluid stains were found on both Crockett's underwear and the bedsheets upon which the Tidwells were sleeping. And both Roger and Debbie Tidwell testified as outlined above.

Crockett testified in his own behalf and claimed that he was "high" from malt liquor the night of the burglary and that he also had smoked some marihuana. As closing argument by his counsel revealed, Crockett attempted to make a case for mitigated punishment due to his voluntary intoxication. Although he admitted to breaking into Tidwell's apartment and even seeing and touching Debbie Tidwell, Crockett denied committing any sexual assault.

Evidence was introduced indicating that Crockett had a long criminal record. On cross-examination of Crockett, the state produced evidence of his ten previous convictions. These are summarized as follows:

(1) April 20, 1977, conviction of attempted rape and sentence of two years and six months (felony);

(2) May 30, 1975, conviction of possession of a controlled substance, amphetamine, and sentence of thirty days (misdemeanor);

(3) May 30, 1975, conviction of theft and sentence of one year (misdemeanor);

(4) May 30, 1975, conviction of hindering a secured creditor and sentence of ninety days (misdemeanor);

(5) March 28, 1975, conviction of delivery of a controlled substance, biphetamine, and sentence of six years (felony);

(6) March 28, 1975, conviction of delivery of a controlled substance, biphetamine, and sentence of six years (felony);

(7) June 4, 1974, conviction of false swearing and sentence of sixty days and a fifty dollar fine (misdemeanor);

(8) April 27, 1973, conviction of theft and sentence of one day and a fifty dollar fine (misdemeanor);

(9) May 26, 1972, conviction of possession of marihuana and three year probated sentence (probation was revoked on March 28, 1975, upon a finding that Crockett had violated a condition of his probation by committing a criminal offense) (felony);

(10) October 17, 1967, conviction of possession of a firearm and $100 fine (misdemeanor).

The jury was given the "pen packets," which consisted of the various official papers that related to these convictions.

Following the evidence and argument of counsel, the jury sentenced Crockett to life imprisonment, the maximum sentence available for burglary under Texas law. Crockett filed a direct appeal with the Texas Court of Criminal Appeals, which subsequently affirmed his conviction. Crockett thereafter filed an application for a state writ of habeas corpus, but the Texas Court of Criminal Appeals denied his petition. Crockett then filed the present federal habeas corpus proceeding. Following an evidentiary hearing, the magistrate to whom the case had been referred filed his findings and conclusions, recommending that relief be denied. The district court, after reviewing the pleadings and the trial record, adopted the findings of the magistrate and denied Crockett's habeas petition.

The only ground for habeas relief asserted by Crockett to the district court was that he received ineffective assistance of counsel at his sentencing trial. Specifically, Crockett alleged that his trial counsel should have objected to his two March 1973 felony convictions for delivery of biphetamines (numbers (5) and (6) in the above list) since they were founded on a void indictment under Texas law, and to his May 1972 felony conviction for marihuana possession (number (9) in the above list) since it could have been reduced to a misdemeanor. Finally, Crockett claimed that his trial counsel should have objected to his June 1974 false swearing misdemeanor conviction (number (7) in the above list) because it was incorrectly dated. The district court denied these claims, and Crockett now reurges each of them on this appeal.

## Discussion

■■■ The Supreme Court has recently articulated the test for ineffective assistance of counsel claims:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Thus a convicted defendant must show both a deficient performance by counsel and prejudice before we will hold the result of the trial unreliable for these purposes.[1] Moreover, he carries the burden of proof, *see Hayes v. Maggio*, 699 F.2d 198, 201–02 (5th Cir.1983), and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance, *see Strickland*, 104 S.Ct. at 2065–66; *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985). To demonstrate prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* 104 S.Ct. at 2068.

*Deficient Performance.*

Crockett claims on appeal that his counsel was deficient in failing to object to the admission of evidence concerning the above-mentioned four prior convictions.[2] We have held that the failure to object to an invalid conviction can constitute a constitutionally deficient performance. *See Lyons v. McCotter*, 770 F.2d 529, 533–35 (5th Cir.1985), *cert. denied*, ─── U.S. ───, 106 S.Ct. 833, 88 L.Ed.2d 804 (1986) (failure to object to previous conviction for same crime for which defendant was then being charged and failure to seek a limiting instruction on this conviction is ineffective assistance by counsel). We review the circumstances surrounding the admission of each allegedly inadmissible conviction to determine if Crockett's counsel's failure to object constituted an error so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

■■■ Crockett contends that the failure of his counsel to object to the admission of his June 1974 misdemeanor conviction for false swearing (number (7) listed above) constituted ineffective assistance. This claim is grounded in the fact that the jury was given the wrong conviction date for this misdemeanor, namely 1960 instead of 1974. The district court, adopting the findings of the magistrate, found that "[i]t is apparent from an examination of the papers of that case that the 1960 date was a typographical error." The "papers" re-

---

1. Here, there was no trial as to guilt or innocence, for Crockett pleaded guilty to the burglary and submitted himself only to jury sentencing. For ineffective assistance of counsel claims involving only a sentencing proceeding, the same standards for attorney performance in a full trial are applicable when the sentencing proceeding "is sufficiently like a trial in its adversarial format and in the standards for decision." *Strickland*, 104 S.Ct. at 2064 (a capital sentencing hearing). The *Strickland* Court further stated that "counsel's role in the proceeding is comparable to counsel's role at trial—to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id.* Here the proceeding was fully adversarial, with formalized evidentiary procedures and attorney argument. Thus it clearly falls within the purview of *Strickland.*

2. These convictions were offered during the punishment phase of the trial under Tex.Code Crim.Proc.Ann. art. 37.07 § 3(a) as part of Crockett's "prior criminal record." This section states that "[t]he term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." *Id.*

ferred to by the court below constituted the pen packet for Crockett's false swearing conviction which was given to the jury. The conviction and sentence page containing the incorrect 1960 date is followed by affidavits that formed the basis of the original complaint. These papers refer numerous times to the fact that the false swearing offense was committed by Crockett in 1972. The pages following these affidavits refer to the correct trial and conviction date in Crockett's guilty plea waiver, order of commitment, and docket sheet. Thus we find that the jury had before it the correct 1974 date of this conviction. Moreover, we note that the obviously clerical error in the recited date of Crockett's conviction judgment did not necessarily render the conviction itself inadmissible at sentencing. A faulty recitation of the conviction date does not render the conviction invalid, but is subject to correction under Texas law. *See* Tex.Code Crim.Proc.Ann. art. 42.06; *Alvarez v. State,* 605 S.W.2d 615, 617 (Tex.Crim.App.1980). Crockett does not claim that had his counsel objected, the fact of conviction would have been kept from the jury. Crockett admitted on cross-examination that he had been convicted of false swearing and was sentenced to sixty days on that account. We conclude that Crockett has failed to discharge the strong presumption that his counsel's failure to object was other than "reasonable professional assistance." *See Strickland,* 104 S.Ct. at 2065–66; *Lyons,* 770 F.2d at 529.

■ A closer question in this respect is presented by Crockett's claim concerning his counsel's failure to object to the admission of his May 1972 felony conviction for possession of marihuana (number (9) listed above). Crockett asserts that since he was in possession of significantly less than four ounces of marihuana, his felony conviction could have been reformed to a misdemean-

or under Tex.Rev.Civ.Stat.Ann. art. 4476–15 § 4.06, and thus his counsel was deficient in failing to have done so. However, requiring Crockett's counsel to reform a previous, wholly unrelated judgment would, in effect, be requiring Crockett's counsel to represent him respecting a charge for which he was neither appointed nor retained. We note there is and was nothing *wrong* with this marihuana conviction. Rather, the question is whether under all the circumstances here it was constitutionally required that Crockett's defense attorney in the burglary case initiate and carry through separate proceedings to mitigate this valid previous marihuana conviction. This prior conviction was not used for enhancement purposes, it formed no portion of the offense charged, and was wholly unrelated to it. It was but one of many valid prior convictions. Moreover, even if Crockett's counsel had reformed the felony charge to a misdemeanor, the conviction would still have been admissible. Tex.Code Crim.Proc.Ann. art. 37.07 § 3(a).[3] Thus the jury would still have had before it evidence that Crockett had a previous 1972 marihuana conviction. Taking all these circumstances into account, we find no constitutionally deficient representation in this instance.

■ We find, however, that the failure of Crockett's counsel to object to the admission of the two March 28, 1975, felony convictions for delivery of biphetamines (numbers (5) and (6) in the above list) was deficient under the *Strickland* guidelines. Crockett claims that these two convictions were inadmissible because the underlying indictments on each conviction were fatally defective under Texas criminal law. In *Ex parte Wilson,* 588 S.W.2d 905 (Tex.Crim. App.1979), the Texas Court of Criminal Appeals held that adequate descriptions of substances not specifically named in a penalty group under the Texas Controlled Sub-

---

**3.** It is clear that under Texas law a misdemeanor conviction is admissible on sentencing as long as it is not used for enhancement purposes. *See Chancy v. State,* 614 S.W.2d 446, 449 (Tex. Crim.App.1981). No enhancement was sought here. As the court in *Chancy* found, misde-

meanor convictions are admissible as part of a defendant's "prior criminal record" and can be considered by a Texas jury under Tex.Code Crim.Proc.Ann. art. 37.07 § 3(a) when it determines the punishment due a defendant. See note 2, *supra.*

stances Act, Tex.Rev.Stat.Ann. art. 4476–15, were required in the indictment, and that without such a description the indictments were fatally defective.[4] We note that the court below did not address whether the failure of Crockett's counsel to object to the admission of these two convictions constituted deficient performance, for it decided the case on other grounds. We find it hard to discern why Crockett's counsel did not object to the admission of these two convictions. We observe that when Crockett was tried over six months had passed since the date the *Ex parte Wilson* opinion came down and that, as the *Wilson* court noted, several earlier Texas cases had voided convictions based on similarly flawed indictments under analogous Texas statutes. 588 S.W.2d at 908 (*citing Crockett v. State*, 511 S.W.2d 519 (Tex.Crim.App. 1974); *Jackson v. State*, 572 S.W.2d 551 (Tex.Crim.App.1978); *Ex parte Charles*, 582 S.W.2d 836 (Tex.Crim.App.1979)). Further, unlike the other two convictions discussed above, an objection to the two biphetamine felony convictions would have kept them from reaching the jury in any context. A simple objection and citation of *Wilson* would have sufficed. Therefore, we conclude that the failure of Crockett's counsel to object to the March 28, 1975 biphetamine convictions constituted a deficient performance by Crockett's counsel at his sentencing trial.

*Prejudice.*

■ We find, however, that even if all four of the abovementioned instances of Crockett's counsel's failure to object constituted a deficient performance, Crockett would not be entitled to habeas relief on his ineffective assistance of counsel claim because he cannot adequately show likely prejudice, the second element of the *Strickland* test. *Strickland*, 104 S.Ct. at 2067–68. The Supreme Court stated in *Strickland* that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 2067. The Court further held that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

■ To determine whether prejudice exists in this case, we review the record to determine the relative role that the alleged trial errors played in the total context of this trial. *See, e.g., Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985) ("Such [conclusory] allegations, standing alone, especially in light of the striking aggravating circumstances of the case, do not satisfy the prejudice component of the *Strickland* test."); *Moore v. Maggio*, 740 F.2d 308, 319 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985) (holding that even if counsel erred in failing to ask for lesser sentence the brutal nature of the crime, fully supported in the record, made prejudice unlikely); *Martin v. Maggio*, 739 F.2d 184, 186–87 (5th Cir.1984) (denying a rehearing on ineffective assistance of counsel claim because totality of circumstances, including proof of a brutal, premeditated murder, did not establish prejudice). We find the following factors useful in helping us make this determination—the weight, nature, and focus of the

---

**4.** The indictments for both counts of delivery of biphetamines charged that Crockett "did unlawfully, knowingly and intentionally deliver a controlled substance, namely: BIPHETAMINE, to another person to-wit: Sam Allen." Biphetamine, we note, is not named in a penalty group in the Texas Controlled Substances Act. The court in *Ex parte Wilson*, 588 S.W.2d at 908, stated:

"To state the rule generally, we hold that in a prosecution under the Controlled Substances

Act for the manufacture, delivery, or possession of a substance not specifically named in a penalty group but which is otherwise described in a penalty group (for example, an isomer of methamphetamine), such description is an essential element of the offense which must be alleged in the indictment in order to state an offense."

Thus each of Crockett's convictions for delivery of biphetamines is void on its face.

evidence presented to the jury; the nature of the prosecuting attorney's closing argument to the jury; and the relative role each disputed conviction played in the outcome of the trial. After reviewing the record in light of these factors, we conclude that there was no reasonable probability that, but for the errors of Crockett's counsel, Crockett would have received a lesser sentence than life imprisonment.[5]

Using these factors, we first observe that the focus of Crockett's sentencing trial was not upon his past criminal record, but on the wanton nature of this particular burglary to which Crockett pleaded guilty. Evidence introduced at the sentencing hearing established that Crockett entered Roger Tidwell's apartment in the middle of the night while he and Debbie Tidwell, his ten-year-old daughter, were asleep. After gaining entry to the apartment, Crockett, apparently armed with a kitchen knife, entered the bedroom where the two were sleeping. He attempted to sexually molest Debbie, but failed to legally rape her because he did not achieve penetration. Debbie testified that he pulled her pajama bottoms down and "moved up and down" on her. She apparently did not realize exactly what had happened to her. Debbie further testified that she did not awaken her father because she was afraid that Crockett would kill him. There was medical corroboration of Debbie's story, for seminal stains were found on the bed sheets and on Crockett's underwear.

Crockett claimed that he did not attempt to rape Debbie Tidwell. He admitted, however, "touching" her. While he claimed that he was "high" on malt liquors and marihuana during the burglary, the arresting police officer did not notice that Crockett was intoxicated. We further note that the jury was given the pen packet for Crockett's previous attempted rape conviction, which was by far his most recent conviction and that which drew the most attention during examination. Other evidence of Crockett's criminal past was brief-

ly introduced during Crockett's cross-examination. Thus the evidence introduced at the sentencing trial established a self-confessed burglary by Crockett, his serious sexual molestation of a young girl that was fully corroborated by her eyewitness testimony and physical evidence, his previous felony conviction for attempted rape, and his failure to acknowledge the full extent of his wanton actions. Consequently, we must conclude that the evidence against Crockett depicted overwhelmingly that a serious crime, fully likely to incur a life sentence independent of his past record, had been committed. Moreover, the evidence in the record is not to any noticeable degree preoccupied with Crockett's past criminal acts.

Under the second factor in our analysis, we find that the prosecutor in closing argument focused upon the particularly heinous aspects of Crockett's burglary and not on the presently disputed convictions. At the beginning of closing argument, the prosecutor explained why he was seeking a life imprisonment sentence:

"We are not asking for life in this case so that it will be a deterrent. I don't know if it's a deterrent, but I know this for sure: That life sentence may keep this man down there long enough so that he will change, maybe; but you can be sure that while he's down there, little Debbie Tidwell and people like her are going to be safe from him—from this man.

"He's not going to be going in the homes and houses of people in Dallas County and molesting their little girls and taking their property while he's down there at the penitentiary."

And later:

"That's what I am asking you to do. I am asking you to protect Debbie and people like her—other little girls like her—like the girl in the attempted rape that he pled guilty on—from this man. Think about the victims of the crimes. Why don't we do that these days? Some-

5. We are not concerned with whether Crockett would have been found guilty or not, because he pleaded guilty. The trial here concerned only the punishment stage.

body is going to, in assessing him a life sentence."

Further, in response to Crockett's claim that he could be rehabilitated if he received a lesser sentence, the prosecutor responded: "His word. Now, this is the word of a man who goes in somebody else's house, who goes in and sees a man and a little girl asleep, and who, I believe the evidence shows without any doubt, had a knife that he had to get out of the kitchen." The prosecutor then began his repeated examination of the brutal nature of this burglary:

> "It's difficult for me to make you folks feel the absolute terror that the little girl must have felt and her father must have felt when they woke up at three-thirty or four in the morning and there's this guy rummaging around the house.
>
> "The way Debbie felt when she felt his weight on top of her, going up and down—I can't recreate that. There's no way I can.
>
> " . . . .
>
> "The man is in someone else's apartment with a knife. Both people are asleep. They're helpless. He's in the very bed with both of them and has a knife. Why should he avoid detection? Anybody gives him any trouble while he's laying there, he can take care of them with the knife. He has nothing to fear from somebody that is asleep—a little girl and a grown man."

These remarks indicate to us that the prosecutor stressed the individual aspects of this crime in his argument to the jury.

■ While it is true, as Crockett claims, that the prosecutor discussed the four disputed convictions in his arguments to the jury, we note that except for the attempted rape conviction these crimes were explored in a rather generic way to indicate Crockett's recidivism, for his past crimes were not individually emphasized.[6] Moreover, we note that even if all of Crockett's contentions about the deficient performance of his counsel were accepted as true with respect to the four disputed convictions, a general discussion by the prosecutor of Crockett's criminal past would have been appropriate because there was evidence in the record of his numerous other criminal convictions.[7] We find the following argument by the prosecutor to be typical of the way Crockett's criminal past was presented to the jury:

> "Now, the last thing I want to say to you is that—I honestly don't know—if this isn't a life case—a man with a long criminal record, who did the acts that he did—if this isn't a life case, then there just isn't one, folks. All I can say is: What on earth does it take?"

This type of argument would have been perfectly legitimate even if objections to the four convictions had been sustained, *see* note 7, *supra*. Thus we find that the prosecutor did not focus to any significant extent upon the four disputed convictions,

6. Crockett cited in his brief the following statement of the prosecutor:

> "Why is this a life case? It is because this man has shown in the past that no matter what the criminal justice system does to him or for him, he's bound and determined to keep committing acts that will eventually send him back to the penitentiary? What evidence do you have of that?
>
> "You have a series of misdemeanor convictions that the man has had, going back to 1960—everything from theft, to possession of drugs, to carrying a pistol. That indicates a course of criminal behavior that he is determined to pursue."

However, the remaining portion of this particular part of the argument states:

> "Now, you get up to about '74 and '75. Joe Rollen Crockett has graduated from the misdemeanor courts in Dallas County to the felo-

ny courts where the punishment is time in the penitentiary. He goes down in 1975 for delivery of drugs, Biphetamines. He goes down on several cases; *and furthermore, then, there is an attempted rape that he pleads guilty to.*" (Emphasis added).

7. If all four convictions were held to be completely inadmissible, Crockett's criminal record would still show a felony conviction for attempted rape and five misdemeanor convictions. As discussed earlier, the marihuana conviction would have been admissible as a misdemeanor even if it had been so reduced. Also, the false swearing conviction was admitted by Crockett. Accordingly, Crockett would be shown to have one felony conviction for attempted rape and six or seven misdemeanor convictions.

and made only brief references to them that in the context of this trial were not particularly significant.

Turning now to the third and last part of our analysis, we find that the effect of these disputed convictions was negligible and cannot constitute prejudice to Crockett under *Strickland.* The evidence introduced and the closing arguments established that the focus of the sentencing trial was not on these disputed convictions. The biphetamine and marihuana convictions simply were not emphasized. Moreover, the most damning conviction, that for attempted rape, the most recent of all and the only one involving analogous wrongdoing, was admissible and is not challenged by Crockett. As to the marihuana conviction, it is clear that it would have been admissible at least as a misdemeanor, and we do not find the downgrading of a felony to a misdemeanor to be prejudicial in this context. Moreover, we note that Crockett *claimed* in his testimony to have been smoking marihuana on the night of the burglary. Concerning Crockett's conviction for false swearing on which the jury was given a wrong date, we similarly find that Crockett was not prejudiced. Although it is true that the state argued that Crockett's recidivism "went back to 1960," an incorrect argument because the false swearing conviction occurred in 1974 and not 1960, we find that this argument made little difference. Even if the false swearing charge was completely ignored, Crockett had previous convictions going back to 1967, and multiple convictions thereafter. His past proclivity to crime apart from this conviction was fully established on the record, and we do not find that a difference from 1960 to 1967 prejudiced him in that regard.[8] Moreover, it is not shown that the clerical error in the date affected the validity of the conviction, which Crockett admitted on cross-examination. This matter simply made no difference in the context of Crockett's trial.

We conclude from our three-prong analysis that Crockett's sentencing trial focused on the sexual molestation of Debbie in her bed, accomplished by the nighttime residential entry, and not on any specific prior crime, except for the relatively recent previous conviction for attempted rape. Crockett's other previous convictions, including the disputed ones, were used only to generally indicate a past proclivity to break the law and were in any event not relied upon by the prosecutor to any appreciable extent. Even if counsel had done all Crockett claims he should have and the false swearing and two biphetamine convictions had been excluded and the marihuana conviction shown as a misdemeanor, nevertheless ample previous convictions would have been on the record, including the one for attempted rape, indicating Crockett's propensity for crime. Given these facts, we cannot find that the alleged deficiencies of his counsel prejudiced Crockett.

### Conclusion

Having rejected Crockett's ineffective assistance of counsel claim, we affirm.

AFFIRMED.

---

8. We note that had the correct date been given on the false swearing conviction, it might have been even more prejudicial to Crockett because it would have indicated even more recent criminal behavior. Further, we think that the 1960 date was an obvious error—as disclosed by the other records before the jury, as well as by the fact that Crockett was only fourteen or fifteen years old in 1960.