**REVISED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-10605

MICHAEL EUGENE SHARP,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director, Texas Department
of Criminal Justice, Institutional
Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

February 26, 1997

Before POLITZ, Chief Judge, KING and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Michael Eugene Sharp, a Texas death row inmate, appeals the district court's denial of habeas corpus relief. For the reasons assigned, we affirm.

## Background

Late in the evening on Friday, June 10, 1982, Sharp forcibly abducted Brenda Kay Broadway and her two daughters, Selena Elms, then 14 years of age, and 8-year-old Christy Elms, from a car wash near Kermit, Texas. Sharp then drove them to an isolated location where he forced Broadway and Selena Elms to perform oral sex on

each other and then stabbed Broadway and Christy Elms to death. Selena managed to escape and, after she spent the night alone in the woods, oil field workers discovered her the next morning, unclothed and suffering from exposure.

Sharp was arrested on June 16, 1982. On June 19, 1982, he was placed in a police line-up and Selena identified him as the murderer of her mother and sister. On June 21, 1982, a Winkler County grand jury returned three indictments charging Sharp with the capital murders of Brenda Kay Broadway and Christy Elms and the aggravated kidnaping of Selena Elms.

Upon motion for change of venue the defendant's trial was moved to Lubbock, Texas where Sharp was tried and convicted of the murder of Christy Elms. Because of a defect in the indictment the death penalty could not be imposed and Sharp was sentenced to life imprisonment. On November 17, 1982, the Winkler County Grand Jury returned a new indictment charging Sharp with the capital murder of Brenda Kay Broadway. The defense moved for change of venue and the case was transferred to Crockett County.

Several months later Sharp was interviewed by Detective Jerry Smith of the Odessa Police Department. Smith, who had interviewed Sharp prior to his first trial, was investigating the disappearance of Blanca Arreola, a young, pregnant Odessa woman who had been missing since May of 1982. Although the record is somewhat unclear whether Sharp admitted to murdering Arreola, he led authorities to her buried body in a remote location in Ector County. The position and location of 18-year-old Arreola's naked body was exactly as

2

described in Sharp's statement to Smith.

At Sharp's trial for Broadway's murder the state presented testimony from several women that Sharp had attempted to lure them into his truck on the evening of the murders. This testimony was followed by that of Selena Elms, by far the most compelling evidence against Sharp, who unqualifiedly identified Sharp as the murderer of her mother. The state also offered evidence that Sharp's truck contained hairs matching that of the three victims, that mud at the scene of the crime was consistent with mud at the oil rig where Sharp worked, and that traces of human blood had been found on Sharp's knife.

On May 19, 1983, Sharp was found guilty of murdering Broadway and the punishment phase of the trial began. The state presented evidence of the Broadway and Christy Elms murders and of Sharp's four prior state felony convictions, including two convictions for aggravated robbery with a deadly weapon. The state also offered the testimony of Detective Smith regarding Sharp's involvement in the Arreola murder. Defense counsel's objection to this testimony, on the grounds of surprise and its nature as an extraneous offense, was overruled.

The defense presented no evidence during the punishment phase. The jury returned affirmative answers to the two special issues that same day and Sharp was sentenced to death. Sharp's conviction and death sentence were affirmed on direct appeal by the Court of

3

Criminal Appeals.[1]  On May 2, 1989, Sharp filed for postconviction relief in state court.  The trial court denied relief and the Court of Criminal Appeals affirmed in an unpublished order which adopted the trial court's findings and conclusions.[2]

Sharp then filed a habeas corpus petition in the federal district court.  The magistrate judge, after several evidentiary hearings, filed findings of fact and legal conclusions, ultimately adopted by the district court, which recommended that Sharp's petition for habeas relief be dismissed.  The district court granted Sharp a certificate of probable cause to appeal.[3]  This appeal followed.

## Analysis

We note at the outset that the magistrate judge found Sharp had not procedurally defaulted any of his claims because the Texas Court of Criminal Appeals, the last state court to review Sharp's case, stated no grounds for its denial of writ.  The state has proffered on appeal, however, and the defendant confirms, that the Court of Criminal Appeals issued an unpublished opinion along with

---

[1]*Sharp v. State*, 707 S.W.2d 611 (Tex.Crim.App. 1986) (en banc), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190 (1988).

[2]*Ex Parte Sharp*, No. 20, 189-02 (Tex.Crim.App. April 23, 1990).

[3]*Brown v. Cain*, _____ F.3d _____, slip op. 1633 (Jan. 21, 1997).  The certificate of appealability requirements of the AEDPA do not apply herein because of the grant of a certificate of probable cause before the effective date of the said Act.  Were we to conclude otherwise, however, a COA appropriately would issue herein.  Assuming without deciding that the standards of the AEDPA are applicable, and applying same to the facts of record, today's result would be the same.

4

its order in which it adopted the findings and conclusion of the state district court, including rulings on a number of procedural defaults. This written order is of record and constitutes a clear and express reliance on state procedural bars by the last Texas court to consider Sharp's case.[4] Accordingly, we must apply the doctrine of procedural default, as dictated by that order, to the issues raised in this appeal.

We first consider Sharp's claim that evidence of Blanche Arreola's murder, an unadjudicated prior offense, was presented during the punishment phase of Sharp's trial in violation of Sharp's fifth, sixth, and fourteenth amendment rights. This issue, insofar as the contemporaneous objections by counsel were not based upon the grounds urged on appeal, is procedurally barred. Because our recent decision in *Amos v. Scott*[5] forecloses Sharp's argument that the Texas contemporaneous objection rule is not an independent and adequate state ground upon which to base a procedural bar to federal review, Sharp is relegated to showing cause and prejudice for his procedural default.[6]

To show cause, Sharp must demonstrate that "'some objective factor external to the defense impeded counsel's efforts'" to lodge

---

[4]*Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590 (1991).

[5]61 F.3d 333 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995).

[6]*Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Sharp advances no claim of actual innocence regarding his conviction or sentence. *Schlup v.* Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

timely the appropriate objection in the trial court.[7] Sharp urges that trial counsel was surprised by the evidence of the Arreola murder because the prosecution withheld the relevant files and denied in a pretrial hearing that such evidence existed. Assuming these allegations of prosecutorial obstruction to be true, it cannot be gainsaid that the evidence of the Arreola murder was known to Sharp. He gave the police statements about the murder and led them to the remote location where Arreola was buried, assisting them in the recovery of the body. Because Sharp possessed at the time of trial sufficient information upon which to base a proper objection irrespective of the state's conduct, we find no cause for the failure to lodge a proper and timely objection.[8]

Sharp also contends that trial counsel's failure to preserve this error constitutes ineffective assistance of counsel under the two-pronged test of *Strickland v. Washington*,[9] thus establishing cause for the procedural default.[10] We find neither deficient

---

[7]*McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[8]*Id.*

[9]466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong of the *Strickland* test requires us to stand in counsel's shoes and determine whether, under the circumstances counsel faced, his or her decisions and actions were objectively reasonable in light of prevailing professional norms of conduct. *Motley v. Collins*, 18 F.3d 1223 (5th Cir.), *cert. denied*, ___ U.S. __, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994). If under this standard we adjudge counsel's performance to have been deficient, then we must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different. *Id.*

[10]*Murray.*

performance nor prejudice in this instance. Again, the circumstances surrounding the discovery of the Arreola murder evidence were well known to Sharp; thus, any error which occurred due to Sharp's withholding this information from his attorney was not the fault of counsel and did not constitute deficient performance.[11] Furthermore, in light of the other evidence introduced during the guilt and punishment phases demonstrating Sharp's savage and depraved disposition and the escalating nature of his depredations, we cannot conclude that but for the admission of the Arreola murder evidence there was a reasonable probability that the jury would have responded differently in the penalty phase.

We next address Sharp's contention that he was denied his sixth, eighth and fourteenth amendment rights to a fair and impartial trial due to pretrial publicity and its effect upon the jury panel. Sharp's counsel did not move for a change of venue or a mistrial; thus, the issue was adjudged procedurally defaulted in state court. As cause to justify this default Sharp again invokes ineffectiveness of counsel under *Strickland*.

Our review of the record reveals that counsel's performance was not objectively unreasonable; only 15 of 72 prospective jurors had an opinion about Sharp's guilt and all of the jurors who

---

[11]As we have noted previously, "[c]riminal defense counsel need not be omniscient, and they are not always omnipotent with respect to the protection of a client's rights." *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir.), *cert. denied*, 510 U.S. 1016 (1993); *see also McCleskey* at 498-99, 111 S.Ct. at 1472-73; *Drew v. Collins*, 964 F.2d 411 (5th Cir. 1992), *cert. denied*, 509 U.S. 925 (1993).

ultimately sat on Sharp's trial were accepted by Sharp's counsel only after lengthy and probing questioning. While it is true that trial counsel allowed onto the jury four jurors who knew Sharp had been convicted of Christy Elms' murder, the record reveals, and the magistrate judge found, that the trial counsel's confidence in the ability of those jurors to act impartially was well-founded and objectively reasonable in light of their sworn responses during *voir dire*. In light of this finding, and given the deference customarily owed to the tactical decisions of trial counsel in jury selection,[12] we cannot conclude that counsel's performance was deficient.

We next consider whether trial counsel was ineffective in failing to discover and present relevant mitigating evidence at the punishment phase. The mitigating evidence involved is that Sharp was a family man and a good son. Given the horrendous circumstances surrounding the murder for which he was on trial, and the other evidence presented at the punishment phase, even if we assume deficient performance we cannot conclude that the prejudice prong of *Strickland* has been satisfied. Simply put, we do not find it reasonably probable that the meager mitigating evidence discussed in Sharp's brief, put in its best possible light, likely would have caused Sharp's jury to reconsider its answers on the

---

[12]"Our scrutiny of counsel's performance [is] 'highly deferential,' and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Motley* at 1226 (quoting *Strickland* at 689); *see also Anderson v. Collins*, 18 F.3d 1208 (5th Cir. 1994).

penalty phase issues.[13]

We next consider whether Sharp's trial counsel was ineffective by failing to preserve for direct appeal a Texas procedural defect that would have mandated *per se* reversal of Sharp's conviction. The first two subsections of Texas Code of Criminal Procedure article 36.01(a) provide that, after the jury has been impaneled, the indictment must be read to the jury by the prosecutor and the defendant must enter a plea in open court. At the time of Sharp's conviction, failure to comply with this procedure, if properly preserved, resulted in automatic reversal.[14]

After Sharp had been convicted and sentenced, he raised the absence of the required procedures in a motion for a new trial.[15]

---

[13]Cf. *Callins v. Collins*, 998 F.2d 269, 279 (5th Cir. 1993) ("the wantonness of the murder and Callins' violent escapades after it ... would have overwhelmed the minimal mitigating evidence that Callins now argues should have been introduced at the capital sentencing phase"), *cert. denied*, 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994); *Wilkerson v. Collins*, 950 F.2d 1054 (5th Cir. 1992) (school records and other evidence of impaired mental ability and prior good behavior insufficient, in light of state's showing during punishment phase, to establish prejudice), *cert. denied*, 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *Crockett v. McCotter*, 796 F.2d 787 (5th Cir.) (attorney error resulting in the admission of four prior convictions insufficient to establish prejudice in light of the record), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986).

[14]*Essary v. State,* 111 S.W. 927 (Tex.Crim.App. 1908). The purpose of this provision is to inform the accused of the charges against him, to inform the jury of the precise terms of the particular charge against the accused, and to allow the jury to hear for itself that the accused refutes or admits the charges. *Barnes v. State*, 797 S.W.2d 353 (Tex.App. 1990, no pet.).

[15]The judgment signed by the trial court and the docket sheet recited, without objection, that the procedures required by art. 36.01(a)(1) and (2) were followed. Nonetheless, in a postconviction hearing in state court the trial judge testified that the indictment had not in fact been read and the plea had not

9

Attached to this motion was an affidavit by the court reporter consisting of a transcript of the defendant's arraignment outside of the jury's presence at the beginning of trial.[16] This transcript excerpt purported to demonstrate that, although Sharp's plea had been taken during the arraignment, after the arraignment the trial proceeded without the required reading of the indictment or the taking of the plea in the jury's presence. The trial court denied this motion, and the case was appealed.

The Court of Criminal Appeals began by stating that the motion for new trial was "a proper method to show error in the record."[17] The court also noted, however, that article 44.24(a) of the Code of Criminal Procedure created a presumption that the prescribed procedures had been followed.[18] The affidavit and transcript

---

been taken in the jury's presence. The trial judge further testified that he had told several people that he thought the case would probably get reversed because of this oversight. The transcript of this testimony was made part of the federal record.

[16]Arraignment is provided for in article 26.02 of the Code of Criminal Procedure; its purpose is to determine the identity and plea of the person charged. Tex. Crim. Proc. Code Ann. art. 26.02. The proper procedure would have been to seat the jury after the arraignment and at that time read the indictment and take the plea. *Collins v. State*, 548 S.W.2d 368 (Tex.Crim.App. 1976), *cert. denied*, 430 U.S. 959 (1977).

[17]*Sharp* at 616.

[18]Code of Criminal Procedure article 44.24(a) read as follows:

(a) The Court of Criminal Appeals shall presume that the venue was proved in the court below; that the jury was properly impaneled and sworn; that the defendant was arraigned; that he pleaded to the indictment; that the court's charge was certified by the judge and filed by the clerk before it was read to the jury, unless such matters were made an issue in the court below, or it otherwise affirmatively appears to the contrary from the record.

excerpt were adjudged insufficient to rebut this presumption because, addressing only the arraignment at the start of trial, they failed to demonstrate affirmatively that the prescribed procedures had not been followed at some other juncture. The court thereafer applied the article 44.24(a) presumption of regularity to dispose of Sharp's claim.

Sharp's original brief is unclear regarding the particular acts or omissions of trial counsel which constituted the alleged ineffective assistance of counsel. In oral argument, however, Sharp's habeas counsel focused upon the failure of trial counsel to attach the correct affidavit to the motion for new trial. Habeas counsel contends that if the error had been preserved in such a way as to obviate the appellate court's ability to rely upon the presumption of regularity in the lower court proceedings, the result would have been automatic reversal. Based upon our review of Texas jurisprudence we conclude that Sharp's counsel did not perform deficiently because a reasonably competent attorney could not have known, prior to the Court of Criminal Appeals' decision in this case, that the motion for new trial would be deemed insufficient to preserve the error adequately.[19]

Although repealed several months after the Court of Criminal Appeals decided this case, this article was incorporated nearly verbatim in Rule 80 of the Texas Rules of Appellate Procedure.

[19]Pertinent to our inquiry is the line of jurisprudence absolving counsel who fail to comply with legal mandates which are uncertain, vague, or undecided at the time of the allegedly deficient conduct. *See United States v. Rothrock*, 20 F.3d 709, 713 (7th Cir. 1994) (counsel not deficient for failing to anticipate how a certain drug would be treated under Sentencing Guidelines, because "this was a difficult, unresolved legal issue"); *Clark v.*

11

Code of Criminal Procedure art. 44.24 applied a presumption of regularity *unless* a departure from standard procedure was "made an issue in the [trial] court" *or* "otherwise affirmatively appears to the contrary from the record." The effect of this presumption on review of the procedural error which occurred during Sharp's trial, however, is, at the very least, muddled in the jurisprudence. It is well-settled that the issue may be preserved for appeal by a timely objection during trial or by a motion for new trial, bill of exception, or motion to arrest judgment.[20] Prior to Sharp's appeal the rule appeared to be that *any* of these methods sufficed to "make issue" in the trial court.[21] The Court of Criminal Appeals' opinion in *Sharp*, however, holds that if the objection is lodged <u>postverdict</u>, as a motion for a new trial or arrest of judgment necessarily must be, then an "affirmative" showing of the error on the record is required to overcome the presumption of regularity. If Sharp's case had been resolved according to the line of cases which appear to hold that postverdict preservation of error in the trial court, e.g. a motion for a new trial, is sufficient to "make

---

*Collins*, 19 F.3d 959 (5th Cir.) (counsel not deficient by failing to object to racially-motivated peremptory strikes before *Batson* decided), *cert. denied*, 115 S.Ct. 432 (1994); *United States v. Zweber*, 913 F.2d 705, 712 (9th Cir. 1990) (counsel not deficient for failing to predict impact of collateral conduct when Sentencing Guidelines "were in initial stages of interpretation by the courts").

[20]*Mays v. State*, 101 S.W. 233 (Tex.Crim.App. 1907).

[21]*Johnson v. State*, 42 S.W.2d 782 (Tex.Crim.App. 1931); *Mays*; *Noble v. State*, 99 S.W. 996 (Tex.Crim.App. 1907); *Thompson v. State*, 80 S.W. 623 (Tex.Crim.App. 1904); *Webb v. State*, 55 S.W. 493 (Tex.Crim.App. 1900). *Mays* and *Noble* were both cited by the Court of Criminal Appeals in Sharp's direct appeal. *Sharp* at 616.

issue in the trial court," there would have been no need for Sharp to demonstrate that the trial court's failure "appeared affirmatively" from the record and the Court of Criminal Appeals could have reached the merits of his claim.  But that was not to be.

In *Sharp*, the Court of Criminal Appeals states that Sharp "made no objection at trial, so the only part of Art. 44.24(a) that is applicable is whether there exists an affirmative showing to the contrary in the record."[22]  In support of this proposition, the court cited *Warren v. State*.[23]  *Warren*, however, held only that when the error is discovered after the trial, reintroduction of the prosecution's evidence, the method usually employed to cure the absence of the indictment/plea procedure,[24] is impracticable, and a new trial is the appropriate remedy.

More importantly, in *Warren* the error complained of, the prosecutor's failure to read enhancement paragraphs of an indictment to the sentencing jury, was raised by a motion for mistrial after sentence had been rendered and the jury had been dismissed.  These circumstances, dispositive in Sharp's case, were treated differently by the *Warren* court:

> While appellant's objection was not the 'proper' trial objection, it did raise the issue before the trial court.  The jury had been dismissed and a motion for new trial would have [been] the appropriate remedy:  but since appellant presented

---

[22]*Sharp* at 616.

[23]693 S.W.2d 414 (Tex.Crim.App. 1985).

[24]*Castillo v. State*, 530 S.W.2d 952 (Tex.Crim.App. 1976); *Limon v. State*, 838 S.W.2d 767 (Tex.App.1992, pet. filed).

the 'issue' to the court at that time, it had the same effect as a motion for new trial. Thus, a motion for new trial was unnecessary. It matters not that the showing was subsequent to the conviction.[25]

*Warren* went on to declare that in moving for a mistrial postverdict, a procedure which the *Warren* court had already avowed had the "same effect" as a moving for a new trial, "appellant 'made an issue' of the failure to read the indictment and enter a plea in the court below."[26] Despite this plain language, the *Sharp* court cited *Warren* as authority for the proposition that Sharp's motion for a new trial was insufficient to make an issue of the procedural defect in the trial court.

We must conclude that Texas law addressing the issue at bar at least was conceptually amorphous and unsettled at the time of Sharp's conviction and appeal.[27] For this reason, we conclude that Sharp's counsel did not perform deficiently by failing to attach

---

[25]*Warren* at 416.

[26]*Id.*

[27]In addition to the jurisprudential vagaries noted above, our research reveals some cases in which the reviewing court simply fails to distinguish at all between the "make issue" and "appear affirmatively" requirements for applying the presumption of regularity. *See, e.g.*, *Peltier v. State*, 626 S.W.2d 30 (Tex.Crim.App. 1981). Further inconsistency and ambiguity is found regarding whether the indictment/plea error may even be raised for the first time on appeal. *Compare Hazelwood v. State*, 838 S.W.2d 647 (Tex.App. 1992, no pet.), *with Reed v. State*, 500 S.W.2d 497 (Tex.Crim.App. 1973). The point we make in this opinion is not that Texas courts are necessarily <u>wrong</u>; in the absence of constitutional limitations they may, of course, interpret Texas law as they see fit. Rather, we find only that counsel's approach to preserving the error on appeal was not an <u>unreasonable</u> one from <u>his perspective</u> in light of the <u>prevailing professional</u> norms in force <u>at that time</u>.

14

the elusive correct affidavit to his motion for a new trial.[28]  This conclusion is based on the fact that reasonable investigation into the applicable law, involving of course a review of relevant prior jurisprudence at the time of Sharp's trial, would have taught that the raising of the issue in a motion for new trial, without more, was sufficient to "make issue in the trial court," thus preserving the issue for appeal.  Such a determination would have removed any consideration whether it was also necessary to demonstrate the error affirmatively on the record to avoid the statutory presumption of regularity.  This is particularly true, as the preceding discussion reveals, if the cases cited in *Sharp* itself are examined.

Furthermore, it is clear from trial counsel's testimony at the evidentiary hearing that his decision to wait until after the verdict to raise the violation was a calculated move.  Had he lodged an objection prior to the verdict the traditional remedy for preverdict violations of the plea/indictment rule, *i.e.* compliance with the procedural rule followed by resubmission of the prosecution's case,[29] would have no doubt been applied. The error

---

[28]*See Garland v. Maggio*, 717 F.2d 199, 207 (5th Cir. 1983) ("'Clairvoyance is not a required attribute of effective representation'") (quoting *Cooks v. United States*, 461 F.2d 530 (5th Cir. 1972)).   Our resolution of this issue makes it unnecessary to discuss whether Sharp was prejudiced by this alleged failure of counsel. *See* Tex.R.App.P. 81(b)(2) (harmless error rule for review of Texas criminal cases); *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (state may take advantage of beneficial changes in the law occurring after conviction and sentence are final).

[29]*Castillo; Limon*.

would have been trumped.  The result would have been the loss of a claim which offered the real prospect of a new trial, either in the trial court or on appeal.  By waiting until the motion for new trial to raise his claim, Sharp's counsel sought to pursue what he reasonably perceived to be the wisest possible strategy.  The trial judge apparently considered that it had merit.  That the Court of Criminal Appeals derailed this strategy does not retroactively render counsel's performance constitutionally deficient.

The procedural defect involved herein is a matter purely of state, not federal, law, and therefore is in and of itself not cognizable on federal habeas corpus review.[30]

Finally, we find no merit whatever in Sharp's mere speculation that counsel was ineffective for failing to secure expert assistance relative to the hair found in the truck or the blood on his knife.

Because Sharp has not raised a cognizable constitutional issue, which we may address in this federal habeas review, which puts into question the federal constitutional fairness of his trial or its result, our result is mandated.

The judgment of the district court is AFFIRMED.

---

[30]28 U.S.C. § 2254.  A federal constitutional violation occurs in this context only if the error complained of is such as to deprive the state court of jurisdiction over the crime.  *See Fransaw v. Lynaugh*, 810 F.2d 518 (5th Cir.), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987).  In Texas, jurisdiction is conferred upon the trial court by the filing of an indictment; "it is the *filing* of the indictment, not its *reading*, which invests the trial court with jurisdiction." *Santos v. State*, 834 SW.2d 953, 956 (Tex.App. pet. ref'd) (citing Tex.Const. art. V, § 12); see also *Studer v. State*, 799 S.W.2d 263 (Tex.Crim.App. 1990) (discussing purpose and role of indictment in Texas law).