## J. D. Essary v. The State.

### No. 3866.     Decided May 27, 1908.

**1.—Murder—Statement of Facts—Questions and Answers—Practice on Appeal.**

Where upon appeal from a conviction of murder in the second degree, the statement of facts consisted entirely of questions and answers, and no necessity therefor was shown in the record, the same could not be considered. Following Hargraves v. State, 53 Texas Crim. Rep., 147; 109 S. W. Rep., 163.

**2.—Same—Jury and Jury Law—Opinion of Juror—Discretion of Court.**

Where upon trial for murder it was set up in motion for new trial that one of the jurors was prejudiced against the defendant and had so expressed

himself, which matter was verified by affidavits attached, and which issue had been submitted on testimony pro and con to the trial court, the matter is one for the discretion of the trial court; and even where the statement of facts could not be considered, it will be assumed that the trial court reached his conclusion upon proper evidence.

### 3.—Same—Challenge for Cause—English Language.

Where upon trial for murder it appeared that the juror objected to stated that he understood the English language well enough to understand the testimony, the argument of counsel and the charge of the court, and that he actually read a passage from the Penal Code, he was not disqualified on the objection that he could not understand the English language.

### 4.—Same—Leading Questions.

Where upon trial for murder the State's witness had testified that the party inquired about had put his hand back of his waist, there was no error in permitting the State's counsel to call the attention of the witness to the particular portion of the body with reference to where the party placed his hand, without suggesting the answer sought. Nor was it leading.

### 5.—Same—Reading of Indictment—Plea of Defendant—Arraignment.

Where upon trial for murder it appeared that all the testimony of the State was offered before the indictment was read, or before any plea on the part of the defendant had been entered, and there was no offer made by the State to reintroduce the testimony, the same was reversible error under article 697, Code Criminal Procedure. Wilkins v. State, 15 Texas Crim. App., 420, and other cases.

Appeal from the District Court of Webb. Tried below before the Hon. J. F. Mullally.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*A. Winslow,* for appellant.—On question of jurors' opinion: Hughes v. State, 60 S. W. Rep., 562; Graham v. State, 28 Texas Crim. App., 582; McWilliam v. State, 32 Texas Crim. Rep., 269; Mitchell v. State, 36 Texas Crim. Rep., 278. On question of jurors' knowledge of the English language: Garcica v. State, 12 Texas Crim. App., 335; McCampbell v. State, 9 Texas Crim. App., 124; Lyles v. State, 41 Texas, 172. On question of asking leading questions: Paris v. State, 35 Texas Crim. Rep., 82.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Webb County for the murder of one Arturo Alexander. On trial he was convicted of murder in the second degree and his punishment assessed at five years confinement in the penitentiary. He has appealed to this court for a reversal of said judgment. The case was presented in an able brief by counsel, as well as submitted in an oral argument in both of which many grounds are advanced why this judgment of conviction should be reversed.

The statement of facts cannot be considered. It is made up wholly of questions and answers and seems to be a verbatim stenographic re-

port of the evidence and is not in any respect in compliance with the Act of the Thirtieth Legislature, page 510, section 5, with reference to statements of facts in criminal cases. We held in the case of Hargraves v. State, 53 Texas Crim. Rep., 147; 109 S. W. Rep., 163, that under the Act of the Thirtieth Legislature, p. 510, section 6, which provides that on appeal in felony cases so much of the stenographer's report shall be inserted in the statement of facts as is necessary to show what the evidence was, provided, that such report shall not be in the form of questions and answers, except where the judge shall deem that order of statement of facts necessary. A statement of facts on appeal which consists entirely of questions and answers can not be considered where there is nothing in the record indicating that the trial judge deemed it necessary to an understanding of the case to so make up such statement of facts. In the absence of the statement of facts, therefore, we are, under rules well settled in this court, precluded from an examination of many questions raised in the record, and particularly precluded from considering the insistence strongly urged by appellant's counsel that the conviction is contrary to the law and the evidence.

There are, however, many questions raised by proper bills of exception which we deem it necessary to notice. One of the grounds urged for reversal was that the court below had erred in refusing to grant appellant a new trial because of the fact that one of the jurors, Charles Galbraith, had, before he had been taken upon the jury, formed and expressed an opinion in the case antagonistic to the appellant and in such manner as to show that he was prejudiced against him. Appellant in his motion for a new trial attached thereto the affidavit of Charles Tannenbaum and Wm. Ryan, both to the effect that they heard said juror, before he was taken upon the jury, say that if he ever got on the jury he would hang the son-of-a-bitch, meaning appellant. This issue was tried before the court below and the juror was sworn and testified emphatically and unequivocally that he had at no time made such statements to the witnesses or any one else, and that the charges were in all things untrue. We held in the case of Fox v. State, 53 Texas Crim. Rep., 109 S. W. Rep., 370, that an issue of this sort was one peculiarly to be determined by the trial court and that at least, in the absence of obvious error on the part of the court, as to the qualification of a juror his action would not be reviewed by us. In the light of the testimony of Galbraith considered in connection with the testimony of several witnesses tending strongly to show the unworthiness of Tannenbaum and Ryan, we do not think the matter is presented in such a way as would justify us in placing our judgment against that of the trial court, or would require us to overrule and set aside his finding and rulings on matters of fact where he has had opportunity to hear the witnesses in person. It was insisted, however, in argument by learned counsel for appellant that if the statement of facts should be stricken out, because made up of questions and answers, then it must follow that the testimony taken by the court below on this issue, which was prepared in the

same way, must also be stricken out and could not be considered by this court, and that the issue would then rest upon appellant's sworn motion strengthened and buttressed by the affidavit of Tannenbaum and Ryan, and that we would be substantially without discretion in our refusal to accept these statements as true. In the first place, it may well be doubted whether as to any incident occurring in the presence of the court, the facts of which are preserved in the record, would be included in the provision of the act relating to the statement of facts, as that term is used in the statute above referred to; but, if the view of appellant should prevail and we were not at liberty to consider this statement, then we could only assume that the court had heard testimony in respect to the matter, and that the evidence was such as to warrant and justify his conclusion adverse to this part of appellant's motion for a new trial.

Another ground of the motion is that the court erred in overruling appellant's challenge to the juror Juan F. Harrera, in this, after he had exhausted all his peremptory challenges appellant challenged this juror because he was a Mexican and for the reason, as alleged, that he did not understand the English language sufficiently well to comprehend the proceedings of the court. In approving this bill of exceptions, the court does so with the qualification and statement that the juror was examined in the English language at length and that he answered promptly in correct English; and that as a part of his examination he was required by appellant's counsel to read a passage from the Penal Code which he read in a manner plainly indicating that he understood it. It was shown that the juror was a native of Laredo, and had worked for years in the office of the tax assessor of Webb County, and stated that he understood the English language well enough to understand the testimony, the arguments of counsel and the charge of the court. We think under the facts stated and the court's explanation of this bill of exceptions, that the juror was not subject to the objection urged.

It is urged that the court erred in permitting the State's counsel to ask Juan Cruz Bernal, a witness for the State, a leading question. This matter arose in this way: The district attorney among other things, asked the witness the following questions which were answered as follows: "Q. Cruz, you say that when this man said, 'Say, who is that,' that he put his hand back here, explain to the jury why he put his hand back there. A. I do not know why he put his hand there. Q. Where did he put his hand? A. In his waist. Q. Back or front of his waist? A. Back, if it had been front I would have put my hand in front. Q. How near his hip pocket was it?" To this last question appellant objected on the ground that the question suggests the answer. This objection was overruled and the witness permitted to answer the question. His answer was, "I cannot say how near his hip pocket his right hand might have been, he put his hand right back there." We do not think this question was leading. As the record shows, the witness had stated that the party inquired about had put his hand back

of his waist. It was the effort of the State's counsel to get the witness to give a more particular statement of the matter and to locate the place where he put his hand with reference to his hip pocket. This was not a leading question; it did call the attention of the witness to the particular portion of the body of appellant with reference to where he placed his hand but did not, we think, in any sense suggest the answer sought to be adduced from the witness, nor was it, in the legal sense, a leading question.

It is shown by bill of exceptions that in the trial of the case, after the testimony of the witnesses, Juan Cruz Bernal, A de la Cruz, Doctor Homer Elkins, George Alexander and Cecillio Bustamante, all witnesses for the State, had been instructed and they had testified before the jury both on direct and cross-examination, and that just before the State's counsel announced to the court that they would rest the case, that then, for the first time, was the indictment against the appellant read to the jury. That at this time the district attorney offered to read and did read the indictment in the case to the jury. Appellant objected to the reading of the indictment at this stage of the proceedings for the reason that the State had closed its case and that appellant had not been offered an opportunity of pleading to the indictment before proceeding to trial on the facts, and because the jury had heard the evidence without having heard the pleadings of the State, or the plea of appellant, and because the reading of the indictment at such stage of the proceedings was in contravention of the rules of procedure in such case made and provided and was calculated to injure the rights of appellant before the jury. This bill is approved with the statement by the court that appellant had been arraigned at a previous day of the term and had pleaded not guilty. Article 697 of our Code of Criminal Procedure, is as follows:

"Order of Proceedings in Trial.—A jury having been empaneled in any criminal action, the cause shall proceed to trial in the following order: 1. The indictment or information shall be read to the jury by the district or county attorney." This provision of the Code of Criminal Procedure was, in the case of Wilkins v. State, 15 Texas Crim. App., 420, held mandatory. In that case, Judge Willson, speaking for the court uses the following language:

"If the provisions of this statute, requiring the indictment to be read to the jury, is mandatory, then the failure to observe it is such error as must set aside the conviction. If, however, it is merely directory, it would not necessarily be cause for reversal.

"We find, upon investigation, that the rules for determining whether a statute is mandatory or directory are by no means plain and uniform. Courts have differed very much in their opinions upon the subject.

"Without entering upon a discussion of the question, upon which there is so much difference of opinion, and upon which that profound jurist, Mr. Cooley, in his great work on Constitutional Limitations, de-

clines to lay down definite rules, we think it sufficient for the purpose of this case to refer to, and adopt as a safe and sound conclusion, the remarks of Justice Moore, of our own Supreme Court, in the case of Campbell v. The State, 42 Texas, 591, in discusing a similar provision of our Code. He says: 'Whenever there is reason to apprehend that the injury may have resulted to the defendant, especially in a case of felony, from the failure to observe directions given the court by the legislature, we think, unquestionably, the judgment should be reversed.'

"We are of the opinion that a failure to read to the jury, on the trial of a felony case, the indictment, must be regarded as an omission from which we must apprehend that injury may have resulted to the defendant. 'No person shall be held to answer for a felony, unless on indictment of a grand jury.' (Art. 1, sec. 10, Const.) It is in and by an indictment that a defendant, the court and the jury are specificially informed of the offense for which he is being tried, and it is to the offense charged in the indictment that he enters his plea. We think the reading of the indictment to the trial jury, in a felony case, is mandatory and essential, and that, were we to hold to the contrary, it would be establishing a loose and dangerous practice, and one which would be in a direct contravention to the plainly expressed will of the Legislature. We are not to be understood as holding that all of the subdivisions of article 660 (697) are mandatory. On the contrary, we are clearly of the opinion that some of them are not, but may be treated as merely directory." In the case of White v. State, 18 Texas Crim. App., 57, Judge White in delivering the opinion of the court in express terms affirms the holding of the court in the Wilkins case in respect to subdivision 1 of article 697, and agrees that this provision of said article is mandatory. In the later case of Murray v. State, 21 Texas Crim. App., 466, Judge White uses this language: "This court, in the case of Wilkins v. The State, without attempting to lay down definite rules for determining whether a statute is mandatory or directory, adopted as a safe and sound conclusion the remarks of Judge Moore in the case of Campbell v. The State, 42 Texas, 591, to the effect that 'whenever there is reason to apprehend that injury may have resulted to the defendant, especially in a case of felony, from a failure to observe directions given the court by the Legislature, we think, unquestionably, the judgment should be reversed.' (15 Texas Crim. App., 420.)" In the case of Holsey v. State, 24 Texas Crim. App., 35, Judge Wilson held that subdivision 3 of article 697, providing that the district attorney, or the counsel prosecuting in his absence, shall state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof, is directory and in passing on this matter used this language:

"There is no apparent reason for apprehending that a disregard of the direction contained in subdivision three resulted injuriously to the defendant, and it is not made to appear in the record that any injury did result to him therefrom. This requirement is quite different from

that contained in subdivision one of said article, and which this court has held to be mandatory, and a disregard of which is per se material error, although injury to the defendant be not shown to have resulted therefrom." In the case of Hearne v. State, 58 S. W. Rep., 1009, it appeared that on the trial the district attorney introduced the evidence and appellant introduced his evidence and the case was closed. It was then called to the attention of the district attorney that the indictment had not been read to the jury, nor a plea of not guilty entered by the court. Thereupon, the court authorized the district attorney to read the indictment and the plea of not guilty was entered by the court. Afterwards the witnesses were reintroduced and their evidence heard by the jury. Appellant objected to this action of the court, but it was held there was no error. In passing on this question, Judge Henderson says: "There was no case before the jury until the indictment was read and the plea of not guilty entered. The action of the court in this respect was in accordance with the decisions of this court. Wilkins v. State, 15 Texas Crim. App., 420; Barbee v. State, 32 Texas Crim. Rep., 170; 22 S. W. Rep., 402." The case of Barbee v. State, referred to in the opinion last mentioned, was in many respects similar to said case. In that case it seems, the jury had been empaneled and the evidence had been introduced, when it was discovered that the indictment had not been read, through inadvertence; whereupon, the district attorney read the indictment and the appellant refused to plead and a plea of not guilty was entered by the court. The district attorney then offered to reintroduce evidence to which appellant objected on the ground that it had been already introduced, before the jury. The court held this to be· a waiver to the reintroduction of the evidence. Passing on this question, Judge Davidson says: "In the absence of such waiver, it was incumbent upon the prosecution to again adduce the evidence on the part of the State, but this became unnecessary when the stated objection was interposed. All the testimony, of defendant and the State had been already placed before the jury, and, but for his suggestion, should have again been gone over. Under the circumstances, its reintroduction would have been more of a formality than otherwise, and was, we think, waived by defendant. The rearraignment and plea thereto was regular, and in conformity with the statute. Code Criminal Procedure, articles 509, 516; Wilson's Criminal Stats., secs., 2108–2110; 1 Bish. Criminal Procedure, sec. 733.

"While under the terms of the Code of Criminal Procedure, article 660 (now 697), it is mandatory that the indictment be read to the jury before the evidence is offered, and while it may be true the conviction would be illegal should this not be done, it would nevertheless be proper, upon discovery of this omission to read such indictment to the jury, and reintroduce the testimony; and it is an equally correct proposition, that the accused could waive both the reading of the indictment and the reintroduction of the evidence." These cases abundantly establish the position that section 1, article 697 is mandatory and that in every felony

case, at least, before the testimony can be heard, the indictment must be read and the plea of the defendant entered. That the indictment in this case was not read; that no plea was entered by appellant, nor that he was called on to enter a plea is incontestably established by the bill of exceptions taken and proved in the record. It is shown that all the testimony of the State was offered before the indictment was read or before any plea on the part of appellant had been entered. The objection to this proceeding, by appellant was so full and clear, that the court could not have been in doubt as to their purpose or effect. Objection was made to the reading of the indictment at this stage, on the ground that the State had closed its case, and on the ground that appellant had not been afforded an opportunity of pleading to the indictment before proceeding with the trial; on the ground that the jury had heard the evidence in behalf of the prosecution without having heard his plea, and because the reading of the indictment at this stage of the proceeding was not only in contravention of the rules of procedure established by law in this State, but was calculated to injure his rights before the jury. That it would have been competent at this stage of the proceedings to have read the indictment and to reintroduce the testimony, is established by the rules laid down in the case of Barbee v. State, and Hearne v. State, supra. This, however, was not done, so far as the bill shows, nor can we presume it was done in the absence of a statement to this effect. On the other hand, it is practically certain and it reasonably appears from the bill, fairly construed, that the testimony was not reintroduced or anything other or further done than to read the indictment to the jury at the conclusion of the State's testimony. The only explanation appended to the bill of exceptions by the trial court, was, a statement to the effect, in substance, that appellant had been arraigned theretofore and on such arraignment had pleaded not guilty. In the case of White v. State, supra, in discussing article 697, and in speaking of the necessity for the observance of the provisions thereof, Judge White says: "But whether in the judgment or elsewhere, if the fact is made to affirmatively appear in the record that the indictment was read *before* the plea was entered, that will be sufficient." The indictment is the basis for the prosecution. Among other things, its office is to inform the appellant of the charge laid against him and one of the purposes of the requirement that it shall be read to the jury at the beginning of the prosecution is to inform them in precise terms of the particular charge laid against the defendant on trial. His plea thereto makes the issue. While it may be thought that this ground of objection is in its nature quite technical, it is, nevertheless, the right of every defendant to have the charge read against him and to have his plea entered therein. Such is the express provision of our statute and this right has been recognized time out of mind by all the decisions of this court. It is of such a substantial nature that in all the decisions of this court it has been treated and regarded as mandatory. That it can be waived is well established but

such a waiver can not be inferred but in a case where the statute has been disregarded the burden rests upon the State to show such conduct and acts upon the part of the defendant as may, in fairness, be treated and regarded as a waiver. In a case involving life and death, it is always unsafe to depart from that order of procedure established by law in this State. This, it clearly appears, was done in this case. No reason is given why it was so done except as we may infer that the failure to follow the statute was the result of mistake or inadvertence. When discovered the error was not cured by the reintroduction of the testimony or any offer so to do, and under the rule obtaining in this State for all these years, the failure to observe this mandatory provision regulating the control of trials, must be held, as we do now hold to be, in itself, violative of his rights and hurtful to his interest.

There are a number of other questions arising on the appeal but they are not of such character as that they are likely to arise on another trial, nor do we believe that they are of such a character as would require a reversal of the case. For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*