Marilyn Yvonne BARNES, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–88–00154–CR.

Court of Appeals of Texas,
Tyler.

Sept. 28, 1990.

David Ingram, Longview, for appellant.

C. Patrice Savage, David E. Moore, Longview, for appellee.

BILL BASS, Justice.

A jury found appellant guilty of the offense of engaging in organized criminal activity under TEX. PENAL CODE ANN. § 71.02(a)(5) (Vernon Supp.1990), and assessed her punishment at fifty years' confinement and a $10,000 fine. We affirm.

Barnes was indicted with thirty-two others, the indictment alleging that Barnes with intent to establish, maintain and participate in a combination, did knowingly and intentionally conspire to commit the offense of delivery of cocaine. The indict-ment grew out of an extensive investigation of cocaine trafficking in Gregg County. The investigation focused on the activities of John and Judy Lindley who were among the thirty-two people indicted. The investigating authorities kept the Lindley's apartment under surveillance and tapped the apartment telephone. A search of the Lindley's apartment was executed pursuant to a warrant. A car leased by the Lindleys but not described in the warrant was also searched. Three pounds of cocaine, drug paraphernalia, and weapons were recovered in the search. Notebooks detailing numerous drug transactions were recovered in the search of the automobile. Entries in one of the notebooks showed that "MARILYN" purchased cocaine from the Lindleys. The State also introduced tape recordings of telephone conversations from Barnes to the Lindleys apparently relating to the cocaine sales recorded in the seized notebooks.

■ In her first point of error, Barnes contends that the trial court erred in denying her motion to suppress the evidence obtained by the State's interception of wire communications. Barnes maintains that the affidavit in support of the application for the order authorizing the wire interception failed to state sufficient facts to show probable cause for its issuance.

The affidavit in support of the application for telephone interception must provide the magistrate with sufficient facts to show that probable cause exists to believe that the interception will provide evidence of the commission of a felony (other than felony possession of marijuana) under the Texas Controlled Substances Act, or under the Texas Dangerous Drug Act. TEX.CODE CRIM.PROC.ANN. ART. 18.20, § 4 (Vernon Supp.1990).

The affidavit supporting the application for the wire intercept order is forty-six pages long. It details seven undercover purchases of cocaine from several drug dealers reasonably believed to be obtaining the cocaine from John Lindley. One of the calls made to arrange the undercover purchase was made from Lindley's number. On at least two occasions, the dealer ar-

ranging the sale went to the Lindley apartment before returning with the cocaine. Information from reliable confidential informants showed that John Lindley had been personally seen with substantial amounts of cocaine. The informants identified John Lindley as a supplier of cocaine to the dealers who sold cocaine to the undercover officers. The affidavit also referred to the telephone records of John Lindley and a court ordered pen register, which showed frequent telephone calls to the dealers who had sold cocaine to the undercover officers as well as to other known drug dealers.

The affidavit stated ample facts to show probable cause to believe that the interception would provide evidence of the commission of the crimes specified in the statute. Appellant's first point is overruled.

■ In her second point, Barnes complains that the trial court erred in denying her motion to suppress the wire intercept evidence, because, she contends, it is obvious from a reading of the affidavit that the order was sought, not to gather evidence of the commission of an offense under the Texas Controlled Substances Act or the Dangerous Drug Act, but to obtain evidence of a violation of the organized crime statute.

TEX.CODE CRIM.PROC.ANN. ART. 18.20, § 4 (Vernon Supp.1990), reads as follows:

A judge may issue an order authorizing interception of wire, oral or electronic communications only if the prosecutor applying for the order shows probable cause to believe that the interception will provide evidence of the commission of a felony (other than felony possession of marihuana) under the Texas Controlled Substances Act (Article 4476–15, Vernon's Texas Civil Statutes) or of a felony under the Texas Dangerous Drug Act (Article 4476–14, Vernon's Texas Civil Statutes).

Appellant's point is without merit. The affidavit showed probable cause to believe that the wire intercept would provide evidence of a felony under the Controlled Substances Act. Substantial evidence of just such violations was in fact obtained

through the use of wiretap. The fact that the evidence was employed to obtain appellant's indictment and conviction for participation in a criminal combination engaging in the violation of the Controlled Substances Act cannot affect the validity of the wiretap order. Barnes' second point of error is overruled.

Barnes' third point of error urges that the trial court erred in refusing to have the State read the entire indictment.

The ten-page indictment charged thirty-three defendants. Nine of the ten pages consisted of an enumeration of the overt acts of all thirty-three defendants charged in the indictment. Over defense objections, the judge permitted the prosecutor to read to the jury only the allegations of the overt acts of the four defendants on trial, and he allowed the prosecutor to omit the reading of the overt acts charged against the twenty-nine defendants not then on trial.

■ "The indictment or information shall be read to the jury by the attorney prosecuting." TEX.CODE CRIM.PROC.ANN. 36.01(a)(1) (Vernon Supp.1990). The reading of the indictment is mandatory. *Essary v. State*, 53 Tex.Crim. 596, 111 S.W. 927 (1908). The rationale for the rule is to inform the accused of the charges against him, and to inform the jury of the precise terms of the particular charge against the accused. *Warren v. State*, 693 S.W.2d 414, 415 (Tex.Cr.App.1985). Without the reading of the indictment and the entry of a plea, there is no joinder of issue. *Peltier v. State*, 626 S.W.2d 30 (Tex.Cr.App.1981).

■ In the instant case, the prosecuting attorney read all of the indictment that pertained to the four defendants on trial. This was sufficient to inform both Barnes and the jury of the charges against her. The omission of the reading of the overt acts of the twenty-nine other defendants not on trial did not mislead or confuse the jury or prevent the joinder of issue. Appellant's third point is overruled.

■ In her fourth point of error, Barnes maintains that "[t]here was insufficient evidence to show that [she] had formed an

intent to maintain or participate in a combination or conspiracy to deliver cocaine, and the trial court erred in overruling appellant's motion for an instructed verdict."

The standard of review for both direct and circumstantial evidence is whether any rational trier of fact could have found all of the essential elements of the offense beyond a reasonable doubt. In making this determination, the appellate court must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Marroquin v. State,* 746 S.W.2d 747 (Tex.Cr.App.1988).

Appellant was charged with violating TEX.PENAL CODE § 71.02(a)(5), which reads as follows:

> (a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following:
>
> . . . .
>
> (5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug. . . .

The pertinent definitions are contained in TEX.PENAL CODE § 71.01,[1] which at the time the indictment was returned, read as follows:

> (a) A 'combination' means five or more persons who collaborate in carrying on criminal activities, although:
>
> (1) participants may not know each other's identity;
>
> (2) membership in the combination may change from time to time; and
>
> (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.
>
> (b) 'Conspires to commit' means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and

one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties.

The indictment of appellant alleged that on or about September 3, 1986, and continuing until on or about September 12, 1986, appellant and thirty-two others did then and there with the intent to establish, maintain and participate in a combination and in the profits of a combination, knowingly and intentionally conspire to commit the offense of unlawful delivery of cocaine and agreed among themselves and with each other to engage in this offense and in pursuance of such agreement and in furtherance of it the said defendants performed overt acts. The overt acts alleged against appellant are as follows:

> (29) communicated with John Lindley by telephone on or about September 5th, 1986;
>
> (30) met together with John Lindley on or about September 5th, 1986;
>
> (31) made a payment to John Lindley for controlled substance on or about September 5th, 1986.

Viewed in the light most favorable to the State, the evidence shows that John and Judy Lindley were the hub of an extensive cocaine distribution system in Longview. They served as suppliers of cocaine to a network of smaller dealers including the appellant. Often the cocaine was advanced or "fronted" to the retail dealer on credit, the Lindleys often receiving payment within a matter of hours when the cocaine was resold. The detailed business records of the enterprise, the surveillance, and wiretaps demonstrate that far more than five persons were included within the combination. At least several of the confederates were on familiar terms and shared their plans and mutual concerns, not only with the Lindleys, but with one another.

The ledgers and wiretaps show that Barnes was one of the most active and

---

1. Acts, 65th Leg., ch. 346, § 1, 1977 Tex.Gen. & Spec.Laws 922, *amended by* Acts, 71st Leg., ch. 782, § 1, Tex.Gen. & Spec.Laws 3468.

aggressive dealers. The Lindley's books reflect that Barnes had a debit balance with the Lindleys on September 4, 1986, of $3,900. During a 116–day period, Barnes received 1,722 grams or almost four pounds of cocaine from the Lindleys, and that she paid them $75,020.00.

In the course of a September 4 telephone conversation with John Lindley, she started to talk about someone "O.D.ing." Lindley interrupted and cautioned her not to use language like that because "she was jeopardizing everyone." The same day she met with Lindley together with at least two of the other dealers and paid $400 on her account. She borrowed one of the other dealer's car to go to the Lindleys on September 7. Later that morning, John Lindley called David Willis but was told by Bonard Deardorff, yet another of the conspirators, that David was with Barnes discussing a "half-pound deal." During a September 11 conversation with the Lindleys, she told John Lindley that everybody was showing up at the 7–11, apparently referring to some of the other members of the combination. When John asked to speak to Parker Walton (P.J.), another dealer, Barnes told Walton, "Uh, my boss wants to holler at you." We conclude that there is ample evidence in the record upon which a rational trier of fact could have found beyond a reasonable doubt that Barnes, with the intent to participate in a criminal combination, unlawfully conspired to deliver and did deliver cocaine. Appellant's fourth point is overruled.

■ In her fifth and last point, Barnes claims that "[t]he trial court erred when it allowed the State to use charts for demonstrative purposes during the presentation of testimony." Although they were never put in evidence and are not included within the record, these charts apparently consisted of a summary of the evidence concerning the four defendants as it was introduced before the jury. Barnes contends that the use of the charts during testimony violated the procedural order of the trial mandated by sections 3 and 4 of TEX.CODE CRIM.PROC. ART. 36.01. She also argues that the charts' use improperly bolstered the testimony of the State's witnesses, and permitted the District Attorney to testify without allowing the appellant her right to confrontation and cross-examination.

Since it is conceded that the charts contained only a running summary of the evidence as it was introduced, we cannot see anything in their use contrary to the order of trial prescribed by the CODE OF CRIMINAL PROCEDURE. Moreover, this argument does not comport with the objection raised at trial, and the challenge to their use on this ground is waived. *Pennington v. State*, 697 S.W.2d 387 (Tex.Cr.App.1985).

■ The appellant's other arguments are also meritless. If the evidence which the charts summarize is admissible, the admission of summary charts into evidence, and their use before the jury, is within the discretion of the trial court. *Speier v. Webster College*, 616 S.W.2d 617, 619 (Tex. 1981). That a chart serves to emphasize testimony does not render it inadmissible. *Id.* The trial was relatively long and complex. Thirty-three persons were named in the indictment; four of them were tried in this case. The jury heard evidence regarding the activities of a large number of undercover agents, drug dealers and their confederates. The judge did not exceed the limits of his discretion in determining that the use of the charts during the presentation of the evidence might minimize confusion in the juror's minds, and aid them in their deliberations. The appellant had the opportunity to challenge the admissibility of the evidence and to cross-examine the summarized testimony as it was received. There was no denial of the right of confrontation or cross-examination. Barnes' fifth point of error is overruled.

The judgment is affirmed.