In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00068-CR


______________________________




RICHARD B. SIMMONS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 278th Judicial District Court


Walker County, Texas


Trial Court No. 20,199-C




 






Before Morriss, Ross, and Grant,* JJ.

Opinion by Justice Grant



______________

*Ben Z. Grant, Justice, Retired, Sitting by Assignment


O P I N I O N



 Richard B. Simmons appeals his conviction for aggravated assault with a deadly weapon on
a public servant. A jury found Simmons guilty as charged in the indictment, and the trial court
sentenced Simmons to ninety-nine years' imprisonment.

 Simmons contends he is entitled to a new trial because the State failed to read the correct
indictment prior to the presentation of evidence, because the evidence is legally and factually
insufficient to support his conviction, and because the trial court inadequately charged the jury.

A. Factual Background.

 There was evidence presented at trial that showed the following: Simmons stabbed
Richard B. James, a correctional officer for the Texas Department of Criminal Justice - Institutional
Division at the Estelle High Security Unit in Walker County, on July 25, 1998. Simmons used a
fragment of chain link fencing for the tip of his weapon. The incident occurred while James
delivered food to Simmons in the administrative segregation unit. 

 The State contends the stabbing was unprovoked. Simmons argued at trial that he acted in
self-defense because he believed he was about to be attacked by James. 

B. Failure To Read the Proper Indictment.

 In his first point of error, Simmons asks this Court to order a new trial based on the State's
failure to read the proper indictment prior to presentation of the State's case. The State filed its
indictment in this case on March 31, 1999. The trial court granted the State's "Motion To Amend
Indictment" on June 8, 2000. The trial court then interdelineated the indictment, reflecting a change
in the description of the deadly weapon allegedly used. The amendment made to the indictment was
the striking of the language "a sharpened metal rod" and adding in its place the language "sharpened
metal object with a paper handle." The other elements of the offense, as alleged in the indictment,
remained unchanged.

 Article 36.01 of the Texas Code of Criminal Procedure requires the prosecutor to read the
indictment or information before the jury. Tex. Code Crim. Proc. Ann. art. 36.01 (Vernon Supp.
2003). The purpose of this provision is to inform the defendant of the precise nature of the charge,
to apprise the jury of the charge at issue, and to allow the jury to hear the defendant refute or admit
the charge. Essary v. State, 53 Tex. Crim. 596, 111 S.W. 927, 929-31 (1908) (citing former Tex.
Code Crim. Proc. Ann. 697(1)); Barnes v. State, 797 S.W.2d 353, 355 (Tex. App.-Tyler 1990, no
pet.). In the case at bar, the State read the indictment, and Simmons entered his plea of "not guilty." 
The problem, which the State concedes on appeal, was that the State read the "original" indictment
rather than the "amended" indictment of June 8. Accordingly, the issue before us is whether the
reading of the "original" indictment, rather than the "amended" indictment containing a different
description of the weapon, was error and, if so, whether that error must be preserved for appellate
review by an objection before the trial court.

 Simmons concedes he did not object to the reading of the original indictment at trial, but he
asks this Court to excuse him from the rule requiring errors to be preserved at trial. Rule 33.1 of the
Texas Rules of Appellate Procedure requires a complaint be made to the trial court by a timely
request, objection, or motion. This procedure is a prerequisite to presenting the point of error on
appeal and must be evident from the record. Tex. R. App. P. 33.1. 

 In the case of Turner v. State, 897 S.W.2d 786 (Tex. Crim. App. 1995), the State failed to
read the indictment at the trial, and Turner had not affirmatively waived its reading. Id. at 787. 
Turner did not object, but waited until his direct appeal to challenge the State's failure to read the
indictment. Id. The Texas Court of Criminal Appeals held that reading the indictment is mandatory
and that failure to do so is not subject to harmless error analysis. Id. at 787-88.

 However, as the court pointed out in Linton v. State, 15 S.W.3d 615, 620-21 (Tex.
App.-Houston [14th Dist.] 2000, pet. ref'd), all errors with the exception of certain federal
constitutional errors labeled as "structural" are subject to a harmless error analysis. See also High
v. State, 964 S.W.2d 637, 638 (Tex. Crim. App. 1998). Structural errors are defined as constitutional
violations affecting the "framework within which the trial proceeds, rather than simply an error in
the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). An example of such
"structural" errors include the following: total deprivation of the right to counsel at trial, a judge who
was not impartial, unlawful exclusion of members of the defendant's race from a grand jury, the right
to self-representation at trial, and the right to public trial. See id. at 309-10.

 The entire omission of the reading of an indictment should be classified as a structural error. 
The court in the Turner opinion sets forth the vital purpose for the reading of the indictment, that
being

 [t]o inform the accused of the charges against him and to inform the jury of the
precise terms of the particular charge against the accused. Without the reading of the
indictment and the entering of a plea, no issue is joined upon which to try.


Turner, 897 S.W.2d at 788. However, an indictment was read in the present case, but one word was
changed and four words were added. The change slightly affected the description of the deadly
weapon involved from being "a sharpened metal rod" to being "a sharpened metal object with a
paper handle." 

 To a great extent the purpose of the reading of the indictment was not omitted from the trial,
inasmuch as the charges of a criminal act were presented to the defendant and to the jury. This
included the nature of the act and the naming of the person against whom the act was committed. 
The record shows the basic purposes of the reading of the indictment were satisfied in this case. 
Simmons was formally arraigned before the jury on the charge of aggravated assault of a correctional
officer, the jury heard the charges being leveled against Simmons, and Simmons was allowed to
enter the plea of "not guilty." This was not tantamount to the failure to read the indictment as
required by the rule, and although it is error, it is not structural error and should be reviewed to
determine if it was harmful error. (1)

 We apply a harm analysis in reviewing a nonconstitutional error. Tex. R. App. 44.2(b);
Aguirre-Mata v. State, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999). When reviewing
nonconstitutional error under Rule 44.2(b), we determine whether the error affected the defendant's
substantial rights. See Llamas v. State, 12 S.W.3d 469, 471 n.2 (Tex. Crim. App. 2000). In
determining this, we must decide whether the error had a substantial or injurious effect on the jury's
verdict. Id. 

 We find the error did not have a substantial or injurious effect and overrule Simmons's first
point of error.

C. Legal Sufficiency.

 In his next point of error, Simmons contends the evidence is legally insufficient to support
his conviction. He contends the evidence is insufficient to show he used or exhibited the deadly
weapon specified in the indictment the State read to the jury. Simmons does not ask us to review
legal sufficiency under the federal standard of Jackson v. Virginia, 443 U.S. 307 (1979). Therefore,
we shall review legal sufficiency under Texas law. (2)

 In addressing claims of legal insufficiency, a materiality inquiry should be made in all cases
that involve a sufficiency of the evidence claim based upon a variance between the indictment and
the proof and that only a material variance will render the evidence insufficient. Fuller v. State, 73
S.W.3d 250, 253 (Tex. Crim. App. 2002) (citing Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim.
App. 2001)). The materiality inquiry "requires a determination of whether the variance deprived the
defendant of notice of the charges or whether the variance subjects the defendant to the risk of later
being prosecuted for the same offense." Fuller, 73 S.W.3d at 253. The hypothetically correct jury
charge takes into consideration the doctrine of material variance: if the variance is immaterial, it
may be disregarded; if the variance is material, it must be included within the "hypothetically
correct" charge. Id. (citing Gollihar, 46 S.W.3d at 257).

 The hypothetically correct jury charge would accurately set forth the law, be authorized by
the indictment, and not raise unnecessarily the State's burden of proof or restrict the State's theory
of liability while still adequately describing the crime for which the defendant is being tried. Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Any variance between the indictment (or
amended indictment in this case) and the proof offered at trial-proof that does not engender surprise
or subject the accused to subsequent prosecution for the same offense-is immaterial. Fuller, 73
S.W.3d at 253; Gollihar, 46 S.W.3d at 257.

 In the case at bar, Simmons did not claim he was surprised by the State's evidence regarding
the weapon the State alleged he used to injure the complainant. Cf. Fuller, 73 S.W.3d at 254; see
also, Stevens v. State, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995) (variance between the victim's
true name and the name listed in the indictment did not cause surprise or prejudice). Simmons's
counsel informed the trial court that he had seen photographs and a videotape of the spear-like
weapon before trial. Simmons even objected to the weapon's admission because its physical state
at the time of trial was slightly different from its appearance on the day Simmons stabbed the victim. 

 We also do not find changing the weapon's description from "sharpened metal rod" to
"sharpened metal object" will subject Simmons to prosecution in violation of his Eighth Amendment
protection against double jeopardy. U.S. Const. amend. VIII. The weapon used by Simmons was
admitted into evidence. The victim described the weapon in great detail. Simmons himself
described how he made the weapon in his cell. Because there is no risk of being subjected to
subsequent prosecution for the same offense and his testimony affirmatively demonstrates Simmons
was not surprised at trial by the proof offered, the variance between the indictment read to the jury
and the proof offered at trial was immaterial.

 Next we measure the State's proof against the hypothetically correct jury charge. 
Remembering that such a charge is one authorized by the indictment, the indictment alleged
Simmons

 [D]id then and there intentionally, knowingly, and recklessly cause bodily injury to
Richard B. James, by stabbing Richard B. James, and did there and then use and
exhibit a deadly weapon, to-wit: a sharpened metal object with a paper handle,
during the commission of said assault, and the said Richard B. James was then and
there a public servant in the lawful discharge of an official duty, to-wit: correctional
officer with the Texas Department of Criminal Justice, and the said defendant knew
Richard B. James was a public servant . . . .


 A person commits the offense of aggravated assault if the person "intentionally, knowingly,
or recklessly causes bodily injury to another" and the victim is "a person the actor knows is a public
servant while the public servant is lawfully discharging an official duty, or in retaliation or on
account of an exercise of official power or performance of an official duty as a public servant" and
the actor either "causes serious bodily injury to another . . . or . . . uses or exhibits a deadly weapon
during the commission of the assault." Tex. Pen. Code Ann. § 22.01 (Vernon Supp. 2003), § 22.02
(Vernon 1994). Therefore, the State needed to prove Simmons (1) intentionally, knowingly, or
recklessly, (2) caused bodily injury, (3) to Officer James, (4) who was carrying out his duties as a
public servant, and (5) that Simmons used or exhibited a deadly weapon, or, alternatively, caused
serious bodily injury. Castillo v. State, 899 S.W.2d 391, 393 (Tex. App.-Houston [14th Dist.] 1995,
no pet.); Villatoro v. State, 897 S.W.2d 943, 945 (Tex. App.-Amarillo 1995, pet. denied). 

 In his testimony to the jury, Simmons admitted he attacked Officer James first. Simmons
admitted using the homemade spear that had been admitted into evidence. Simmons also
acknowledged that he had known James for a period of about fifteen years in James's capacity as a
correctional officer for TDCJ-ID. Simmons's testimony alone, when measured against the
hypothetically correct jury charge, is sufficient to show he (1) intentionally, (2) stabbed, (3)
Officer James, (4) while James carried out his duties as a public servant, and (5) that Simmons used
a weapon that was capable of causing serious bodily injury or death during the commission of the
offense. This conclusion is amply supported by testamentary evidence from the victim and John
Fling, an officer with the TDCJ-ID who witnessed the incident, as well as the physical evidence
presented by the State. We overrule Simmons's challenge to the legal sufficiency of the evidence.

D. Factual Sufficiency.

 In his next point of error, Simmons contends the evidence is factually insufficient to support
his conviction.

 In conducting a factual sufficiency review, we view the evidence in a neutral light
and set aside the verdict only if the evidence supporting guilt is so obviously weak,
or the contrary evidence so overwhelmingly outweighs the supporting evidence, as
to render the conviction clearly wrong and manifestly unjust. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). While a reviewing court has some authority
to disregard evidence that supports the verdict, it must be appropriately deferential
so as to avoid substituting its own judgment for that of the fact finder. Wesbrook v.
State, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001). The reviewing court should not substantially intrude upon the jury's role as
the sole judge of the weight and credibility of witness testimony.


Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002).

 Simmons contends the evidence is factually insufficient because there was no evidence to
show the weapon by design, manner, or use was capable of causing death or serious bodily injury. 
At trial the State asked Officer James, a veteran correctional officer with TDCJ-ID, if he had ever
seen other weapons similar to the one used by Simmons. Officer James replied affirmatively and
agreed that such weapons are able to cause serious bodily injury. 

 Simmons did not challenge James's assertion that the spear-like weapon was capable of
causing serious bodily injury. Therefore, there is no testimonial evidence-either through cross-examination or direct testimony-to counter-balance the State's theory that the spear could cause
serious bodily injury. Additionally, the weapon was admitted into evidence, allowing jurors to
observe the weapon with their own eyes. Admission of the weapon, though not critical, greatly aids
jurors in determining whether a weapon is capable of causing death or serious bodily injury. See
Charleston v. State, 33 S.W.3d 96, 100 (Tex. App.-Texarkana 2000, pet. ref'd) (introducing a
weapon aids the jury in making a deadly weapon determination, but admission of a weapon is not
critical to the jury's determination). 

 The trial court instructed the jury on the terms "bodily injury," "serious bodily injury," and
"deadly weapon." Its instructions mimic the Texas Penal Code definitions. See Tex. Pen. Code
Ann. § 1.07 (Vernon 1994). While Simmons correctly notes that the spear-like weapon used in this
case was an unusual weapon, and not a deadly weapon per se, we cannot say that a weapon of this
design, with a piece of broken chain link fencing as its spearhead, could not be judged by ordinary
jurors to be capable of causing "serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ," given Simmons's use and intended use of the
weapon. And the evidence supporting the jury's conclusion that the spear was a deadly weapon was
not greatly outweighed by contrary evidence. Accordingly, we overrule Simmons's factual
sufficiency challenge.


E. Jury Charge Error.

 In his final point of error, Simmons contends the trial court erred in its jury charge. More
specifically, Simmons contends a single paragraph of the charge lacks required language and,
therefore, we should either acquit the defendant or reform the judgment to reflect a conviction for
misdemeanor assault. 

 To preserve error in the jury charge, a specific procedure must be followed.

 Before said charge is read to the jury, the defendant or his counsel shall have a
reasonable time to examine the same and he shall present his objections thereto in
writing, distinctly specifying each ground of objection. Said objections may embody
errors claimed to have been committed in the charge, as well as errors claimed to
have been committed by omissions therefrom or in failing to charge upon issues
arising from the facts, and in no event shall it be necessary for the defendant or his
counsel to present special requested charges to preserve or maintain any error
assigned to the charge, as herein provided. The requirement that the objections to the
court's charge be in writing will be complied with if the objections are dictated to the
court reporter in the presence of the court and the state's counsel, before the reading
of the court's charge to the jury. Compliance with the provisions of this Article is all
that is necessary to preserve, for review, the exceptions and objections presented to
the charge and any amendment or modification thereof.


Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2003). Any unobjected-to error in the
charge will not result in reversal unless it is shown that the error was calculated to injure the
substantial and material rights of the accused. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon
1981); Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984); see Huizar v. State, 12 S.W.3d
479, 484 (Tex. Crim. App. 2000). Stated differently, if the appellant fails to object to an error in the
jury charge, the appellant must demonstrate egregious harm on appeal to obtain a reversal. 
Gagliardo v. State, 78 S.W.3d 469, 473 (Tex. App.-Tyler 2001, pet. ref'd).

 The trial court's charge in this case instructed the jury on four possible verdicts: 
(1) aggravated assault with a deadly weapon on a public servant, (2) aggravated assault with a deadly
weapon (not on a public servant), (3) misdemeanor assault (no deadly weapon and not a public
servant), or (4) not guilty. The complained-of charge occurs in the application paragraph on
misdemeanor assault. Simmons contends the instruction fails to permit the jury to find Simmons
guilty if they believe Simmons assaulted Officer James but do not find Officer James was acting in
the scope of his employment and do not believe beyond a reasonable doubt that Simmons used or
exhibited a deadly weapon during the commission of the offense. Simmons does not contest the
application paragraphs on the two more serious charges. Because Simmons did not object to the
charge at trial, we may not reverse unless the error was egregious. See Huizar, 12 S.W.3d at 484.

 First, we agree with Simmons that the charge does contain an error that the omission of a
phrase permitting the jury to find Simmons guilty of misdemeanor assault if it did not believe,
beyond a reasonable doubt, that Simmons used or exhibited a deadly weapon during the commission
of the offense or that James was acting in the scope of his employment as a correctional officer
during the assault, is clearly inconsistent with Article 22.01 of the Texas Penal Code governing
misdemeanor assault. Therefore, having found the charge erroneous, we must determine whether
the error was calculated to injure the substantial rights of Simmons.

 To determine whether harm from an erroneous jury charge is egregious, the actual degree of
harm is assayed in light of the entire jury charge, the state of the evidence, including contested issues
and weight of probative evidence, the argument of counsel, and any other relevant information
revealed by the record of the trial as a whole. Almanza, 686 S.W.2d at 171. The purpose of this
review is to illuminate the actual, not merely the theoretical, harm to the accused. Gornick v. State,
947 S.W.2d 678, 681 (Tex. App.-Texarkana 1997, no pet.). 

 After weighing the evidence, the jury found Simmons guilty of aggravated assault with a
deadly weapon on a public servant. The charge did not authorize such a finding unless the jury
found, beyond a reasonable doubt, that Simmons assaulted James while James was acting in his
capacity as a correctional officer and the jury also believed, beyond a reasonable doubt, that
Simmons used a deadly weapon during the commission of the offense. Unless the jury so found
beyond a reasonable doubt, the jury was specifically instructed to acquit the defendant. The jury was
similarly instructed with respect to aggravated assault with a deadly weapon. Accordingly, the jury
would not reach the question of whether Simmons was guilty of misdemeanor assault unless it first
acquitted Simmons of the alternative felony offenses. The jury, however, found Simmons guilty of
the first felony offense, as charged in the indictment. Thus, the jury would never have considered
Simmons's guilt of misdemeanor assault. Simmons suffered no actual harm as a result of omission
in the application paragraph on misdemeanor assault. We overrule Simmons's final point of error.


 The trial court's judgment is affirmed.

 





 Ben Z. Grant*

 Justice

*Retired, Justice, Sitting by Assignment


Submitted: October 23, 2002

Decided: April 25, 2003


Publish
1. We do not intend this case to set the precedent that in all cases in which a defective
indictment is read, there cannot be structural error. If the errors in the indictment read are so flawed
as to not fulfill the purpose of the reading of the indictment, then they could be tantamount to no
reading of the indictment and would be analogous to the situation in the Turner case. Turner v.
State, 897 S.W.2d 786 (Tex. Crim. App. 1995).
2. This distinction is critical in light of the Texas Court of Criminal Appeals's recent decision
in Fuller v. State holding that Jackson set forth the federal standard, but "that under Malik v. State,
[953 S.W.2d 234 (Tex. Crim. App. 1997),] evidentiary sufficiency should be measured against the
'elements of the offense as defined by the hypothetically correct jury charge for the case' in all
sufficiency cases." Fuller v. State, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002). The two standards,
stated the court, are "clearly not the same" and review under the federal standard requires a separate
analytical framework. Id. at 252.