**Richard B. SIMMONS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–02–00068–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 23, 2002.

Decided April 25, 2003.

---

Nelda F. Williams, State Counsel for Offenders, Huntsville, for appellant.

Candace Norris, Chief Appellate Atty., Special Prosecution Unit Plainview, for appellee.

Before MORRISS, ROSS, and GRANT,* JJ.

## OPINION

Opinion by Justice GRANT.

Richard B. Simmons appeals his conviction for aggravated assault with a deadly weapon on a public servant. A jury found Simmons guilty as charged in the indictment, and the trial court sentenced Simmons to ninety-nine years' imprisonment.

Simmons contends he is entitled to a new trial because the State failed to read the correct indictment prior to the presentation of evidence, because the evidence is legally and factually insufficient to support his conviction, and because the trial court inadequately charged the jury.

### A. Factual Background.

There was evidence presented at trial that showed the following: Simmons stabbed Richard B. James, a correctional officer for the Texas Department of Criminal Justice—Institutional Division at the Estelle High Security Unit in Walker County, on July 25, 1998. Simmons used a fragment of chain link fencing for the tip of his weapon. The incident occurred while James delivered food to Simmons in the administrative segregation unit.

The State contends the stabbing was unprovoked. Simmons argued at trial that he acted in self-defense because he believed he was about to be attacked by James.

---

* Ben Z. Grant, Justice, Retired, Sitting by Assignment.

## B. Failure To Read the Proper Indictment.

In his first point of error, Simmons asks this Court to order a new trial based on the State's failure to read the proper indictment prior to presentation of the State's case. The State filed its indictment in this case on March 31, 1999. The trial court granted the State's "Motion To Amend Indictment" on June 8, 2000. The trial court then interdelineated the indictment, reflecting a change in the description of the deadly weapon allegedly used. The amendment made to the indictment was the striking of the language "a sharpened metal rod" and adding in its place the language "sharpened metal object with a paper handle." The other elements of the offense, as alleged in the indictment, remained unchanged.

Article 36.01 of the Texas Code of Criminal Procedure requires the prosecutor to read the indictment or information before the jury. TEX.CODE CRIM. PROC. ANN. art. 36.01 (Vernon Supp.2003). The purpose of this provision is to inform the defendant of the precise nature of the charge, to apprise the jury of the charge at issue, and to allow the jury to hear the defendant refute or admit the charge. *Essary v. State*, 53 Tex.Crim. 596, 111 S.W. 927, 929–31 (1908) (citing former TEX.CODE CRIM. PROC. ANN. 697(1)); *Barnes v. State*, 797 S.W.2d 353, 355 (Tex.App.-Tyler 1990, no pet.). In the case at bar, the State read the indictment, and Simmons entered his plea of "not guilty." The problem, which the State concedes on appeal, was that the State read the "original" indictment rather than the "amended" indictment of June 8. Accordingly, the issue before us is whether the reading of the "original" indictment, rather than the "amended" indictment containing a different description of the weapon, was error and, if so, whether that error

must be preserved for appellate review by an objection before the trial court.

Simmons concedes he did not object to the reading of the original indictment at trial, but he asks this Court to excuse him from the rule requiring errors to be preserved at trial. Rule 33.1 of the Texas Rules of Appellate Procedure requires a complaint be made to the trial court by a timely request, objection, or motion. This procedure is a prerequisite to presenting the point of error on appeal and must be evident from the record. TEX.R.APP. P. 33.1.

In the case of *Turner v. State*, 897 S.W.2d 786 (Tex.Crim.App.1995), the State failed to read the indictment at the trial, and Turner had not affirmatively waived its reading. *Id.* at 787. Turner did not object, but waited until his direct appeal to challenge the State's failure to read the indictment. *Id.* The Texas Court of Criminal Appeals held that reading the indictment is mandatory and that failure to do so is not subject to harmless error analysis. *Id.* at 787–88.

However, as the court pointed out in *Linton v. State*, 15 S.W.3d 615, 620–21 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd), all errors with the exception of certain federal constitutional errors labeled as "structural" are subject to a harmless error analysis. *See also High v. State*, 964 S.W.2d 637, 638 (Tex.Crim.App. 1998). Structural errors are defined as constitutional violations affecting the "framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). An example of such "structural" errors include the following: total deprivation of the right to counsel at trial, a judge who was not impartial, unlawful exclusion of members of the defendant's race from a grand jury, the right

to self-representation at trial, and the right to public trial. *See id.* at 309–10, 111 S.Ct. 1246.

■ The entire omission of the reading of an indictment should be classified as a structural error. The court in the *Turner* opinion sets forth the vital purpose for the reading of the indictment, that being

> [t]o inform the accused of the charges against him and to inform the jury of the precise terms of the particular charge against the accused. Without the reading of the indictment and the entering of a plea, no issue is joined upon which to try.

*Turner,* 897 S.W.2d at 788. However, an indictment was read in the present case, but one word was changed and four words were added. The change slightly affected the description of the deadly weapon involved from being "a sharpened metal rod" to being "a sharpened metal object with a paper handle."

■ To a great extent the purpose of the reading of the indictment was not omitted from the trial, inasmuch as the charges of a criminal act were presented to the defendant and to the jury. This included the nature of the act and the naming of the person against whom the act was committed. The record shows the basic purposes of the reading of the indictment were satisfied in this case. Simmons was formally arraigned before the jury on the charge of aggravated assault of a correctional officer, the jury heard the charges being leveled against Simmons,

and Simmons was allowed to enter the plea of "not guilty." This was not tantamount to the failure to read the indictment as required by the rule, and although it is error, it is not structural error and should be reviewed to determine if it was harmful error.[1]

■ We apply a harm analysis in reviewing a nonconstitutional error. Tex. R.App. 44.2(b); *Aguirre-Mata v. State,* 992 S.W.2d 495, 498 (Tex.Crim.App.1999). When reviewing nonconstitutional error under Rule 44.2(b), we determine whether the error affected the defendant's substantial rights. *See Llamas v. State,* 12 S.W.3d 469, 471 n. 2 (Tex.Crim.App.2000). In determining this, we must decide whether the error had a substantial or injurious effect on the jury's verdict. *Id.*

We find the error did not have a substantial or injurious effect and overrule Simmons's first point of error.

## C. Legal Sufficiency.

■ In his next point of error, Simmons contends the evidence is legally insufficient to support his conviction. He contends the evidence is insufficient to show he used or exhibited the deadly weapon specified in the indictment the State read to the jury. Simmons does not ask us to review legal sufficiency under the federal standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, we shall review legal sufficiency under Texas law.[2]

---

1. We do not intend this case to set the precedent that in all cases in which a defective indictment is read, there cannot be structural error. If the errors in the indictment read are so flawed as to not fulfill the purpose of the reading of the indictment, then they could be tantamount to no reading of the indictment and would be analogous to the situation in the *Turner* case. *Turner v. State,* 897 S.W.2d 786 (Tex.Crim.App.1995).

2. This distinction is critical in light of the Texas Court of Criminal Appeals's recent decision in *Fuller v. State* holding that *Jackson* set forth the federal standard, but "that under *Malik v. State,* [953 S.W.2d 234 (Tex.Crim. App.1997),] evidentiary sufficiency should be measured against the 'elements of the offense as defined by the hypothetically correct jury charge for the case' in all sufficiency cases." *Fuller v. State,* 73 S.W.3d 250, 252 (Tex.Crim.

▇▇▇ In addressing claims of legal insufficiency, a materiality inquiry should be made in all cases that involve a sufficiency of the evidence claim based upon a variance between the indictment and the proof and that only a material variance will render the evidence insufficient. *Fuller v. State*, 73 S.W.3d 250, 253 (Tex.Crim.App. 2002) (citing *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex.Crim.App.2001)). The materiality inquiry "requires a determination of whether the variance deprived the defendant of notice of the charges or whether the variance subjects the defendant to the risk of later being prosecuted for the same offense." *Fuller*, 73 S.W.3d at 253. The hypothetically correct jury charge takes into consideration the doctrine of material variance: if the variance is immaterial, it may be disregarded; if the variance is material, it must be included within the "hypothetically correct" charge. *Id.* (citing *Gollihar*, 46 S.W.3d at 257).

▇▇▇ The hypothetically correct jury charge would accurately set forth the law, be authorized by the indictment, and not raise unnecessarily the State's burden of proof or restrict the State's theory of liability while still adequately describing the crime for which the defendant is being tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). Any variance between the indictment (or amended indictment in this case) and the proof offered at trial—proof that does not engender surprise or subject the accused to subsequent prosecution for the same offense—is immaterial. *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 257.

In the case at bar, Simmons did not claim he was surprised by the State's evidence regarding the weapon the State alleged he used to injure the complainant. *Cf. Fuller*, 73 S.W.3d at 254; *see also,*

*Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim.App.1995) (variance between the victim's true name and the name listed in the indictment did not cause surprise or prejudice). Simmons's counsel informed the trial court that he had seen photographs and a videotape of the spear-like weapon before trial. Simmons even objected to the weapon's admission because its physical state at the time of trial was slightly different from its appearance on the day Simmons stabbed the victim.

We also do not find changing the weapon's description from "sharpened metal rod" to "sharpened metal object" will subject Simmons to prosecution in violation of his Eighth Amendment protection against double jeopardy. U.S. CONST. amend. VIII. The weapon used by Simmons was admitted into evidence. The victim described the weapon in great detail. Simmons himself described how he made the weapon in his cell. Because there is no risk of being subjected to subsequent prosecution for the same offense and his testimony affirmatively demonstrates Simmons was not surprised at trial by the proof offered, the variance between the indictment read to the jury and the proof offered at trial was immaterial.

Next we measure the State's proof against the hypothetically correct jury charge. Remembering that such a charge is one authorized by the indictment, the indictment alleged Simmons

> [D]id then and there intentionally, knowingly, and recklessly cause bodily injury to Richard B. James, by stabbing Richard B. James, and did there and then use and exhibit a deadly weapon, to-wit: a sharpened metal object with a paper handle, during the commission of said assault, and the said Richard B. James

App.2002). The two standards, stated the court, are "clearly not the same" and review

under the federal standard requires a separate analytical framework. *Id.* at 252.

was then and there a public servant in the lawful discharge of an official duty, to-wit: correctional officer with the Texas Department of Criminal Justice, and the said defendant knew Richard B. James was a public servant. . . .

A person commits the offense of aggravated assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another" and the victim is "a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant" and the actor either "causes serious bodily injury to another ... or ... uses or exhibits a deadly weapon during the commission of the assault." TEX. PEN.CODE ANN. § 22.01 (Vernon Supp. 2003), § 22.02 (Vernon 1994). Therefore, the State needed to prove Simmons (1) intentionally, knowingly, or recklessly, (2) caused bodily injury, (3) to Officer James, (4) who was carrying out his duties as a public servant, and (5) that Simmons used or exhibited a deadly weapon, or, alternatively, caused serious bodily injury. *Castillo v. State*, 899 S.W.2d 391, 393 (Tex. App.-Houston [14th Dist.] 1995, no pet.); *Villatoro v. State*, 897 S.W.2d 943, 945 (Tex.App.-Amarillo 1995, pet. denied).

In his testimony to the jury, Simmons admitted he attacked Officer James first. Simmons admitted using the homemade spear that had been admitted into evidence. Simmons also acknowledged that he had known James for a period of about fifteen years in James's capacity as a correctional officer for TDCJ–ID. Simmons's testimony alone, when measured against the hypothetically correct jury charge, is sufficient to show he (1) intentionally, (2) stabbed, (3) Officer James, (4) while James carried out his duties as a public servant, and (5) that Simmons used a weapon that

was capable of causing serious bodily injury or death during the commission of the offense. This conclusion is amply supported by testamentary evidence from the victim and John Fling, an officer with the TDCJ–ID who witnessed the incident, as well as the physical evidence presented by the State. We overrule Simmons's challenge to the legal sufficiency of the evidence.

## D. Factual Sufficiency.

■ In his next point of error, Simmons contends the evidence is factually insufficient to support his conviction.

In conducting a factual sufficiency review, we view the evidence in a neutral light and set aside the verdict only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000). While a reviewing court has some authority to disregard evidence that supports the verdict, it must be appropriately deferential so as to avoid substituting its own judgment for that of the fact finder. *Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex.Crim. App.2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). The reviewing court should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex.Crim. App.2002).

Simmons contends the evidence is factually insufficient because there was no evidence to show the weapon by design, manner, or use was capable of causing death or serious bodily injury. At trial the State asked Officer James, a veteran correctional officer with TDCJ–ID, if he had ever

seen other weapons similar to the one used by Simmons. Officer James replied affirmatively and agreed that such weapons are able to cause serious bodily injury.

Simmons did not challenge James's assertion that the spear-like weapon was capable of causing serious bodily injury. Therefore, there is no testimonial evidence—either through cross-examination or direct testimony—to counter-balance the State's theory that the spear could cause serious bodily injury. Additionally, the weapon was admitted into evidence, allowing jurors to observe the weapon with their own eyes. Admission of the weapon, though not critical, greatly aids jurors in determining whether a weapon is capable of causing death or serious bodily injury. *See Charleston v. State,* 33 S.W.3d 96, 100 (Tex.App.-Texarkana 2000, pet. ref'd) (introducing a weapon aids the jury in making a deadly weapon determination, but admission of a weapon is not critical to the jury's determination).

The trial court instructed the jury on the terms "bodily injury," "serious bodily injury," and "deadly weapon." Its instructions mimic the Texas Penal Code definitions. *See* TEX. PEN.CODE ANN. § 1.07 (Vernon 1994). While Simmons correctly notes that the spear-like weapon used in this case was an unusual weapon, and not a deadly weapon *per se,* we cannot say that a weapon of this design, with a piece of broken chain link fencing as its spearhead, could not be judged by ordinary jurors to be capable of causing "serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," given Simmons's use and intended use of the weapon. And the evidence supporting the jury's conclusion that the spear was a deadly weapon was not greatly outweighed by contrary evidence. Accordingly, we overrule Simmons's factual sufficiency challenge.

### E. Jury Charge Error.

In his final point of error, Simmons contends the trial court erred in its jury charge. More specifically, Simmons contends a single paragraph of the charge lacks required language and, therefore, we should either acquit the defendant or reform the judgment to reflect a conviction for misdemeanor assault.

■ To preserve error in the jury charge, a specific procedure must be followed.

Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts, and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided. The requirement that the objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and objections presented to the charge and any amendment or modification thereof.

TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2003). Any unobjected-to error in the charge will not result in reversal unless it is shown that the error was calculated to injure the substantial and material

rights of the accused. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim. App.1984); *see Huizar v. State,* 12 S.W.3d 479, 484 (Tex.Crim.App.2000). Stated differently, if the appellant fails to object to an error in the jury charge, the appellant must demonstrate egregious harm on appeal to obtain a reversal. *Gagliardo v. State,* 78 S.W.3d 469, 473 (Tex.App.-Tyler 2001, pet. ref'd).

The trial court's charge in this case instructed the jury on four possible verdicts: (1) aggravated assault with a deadly weapon on a public servant, (2) aggravated assault with a deadly weapon (not on a public servant), (3) misdemeanor assault (no deadly weapon and not a public servant), or (4) not guilty. The complained-of charge occurs in the application paragraph on misdemeanor assault. Simmons contends the instruction fails to permit the jury to find Simmons guilty if they believe Simmons assaulted Officer James but do not find Officer James was acting in the scope of his employment and do not believe beyond a reasonable doubt that Simmons used or exhibited a deadly weapon during the commission of the offense. Simmons does not contest the application paragraphs on the two more serious charges. Because Simmons did not object to the charge at trial, we may not reverse unless the error was egregious. *See Huizar,* 12 S.W.3d at 484.

■ First, we agree with Simmons that the charge does contain an error that the omission of a phrase permitting the jury to find Simmons guilty of misdemeanor assault if it did not believe, beyond a reasonable doubt, that Simmons used or exhibited a deadly weapon during the commission of the offense or that James was acting in the scope of his employment as a correctional officer during the assault, is clearly inconsistent with Article 22.01 of the Texas Penal Code governing misdemeanor assault. Therefore, having found the charge erroneous, we must determine whether the error was calculated to injure the substantial rights of Simmons.

■ To determine whether harm from an erroneous jury charge is egregious, the actual degree of harm is assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171. The purpose of this review is to illuminate the actual, not merely the theoretical, harm to the accused. *Gornick v. State,* 947 S.W.2d 678, 681 (Tex.App.-Texarkana 1997, no pet.).

After weighing the evidence, the jury found Simmons guilty of aggravated assault with a deadly weapon on a public servant. The charge did not authorize such a finding unless the jury found, beyond a reasonable doubt, that Simmons assaulted James while James was acting in his capacity as a correctional officer and the jury also believed, beyond a reasonable doubt, that Simmons used a deadly weapon during the commission of the offense. Unless the jury so found beyond a reasonable doubt, the jury was specifically instructed to acquit the defendant. The jury was similarly instructed with respect to aggravated assault with a deadly weapon. Accordingly, the jury would not reach the question of whether Simmons was guilty of misdemeanor assault unless it first acquitted Simmons of the alternative felony offenses. The jury, however, found Simmons guilty of the first felony offense, as charged in the indictment. Thus, the jury would never have considered Simmons's guilt of misdemeanor assault. Simmons suffered no actual harm as a result of omission in the application paragraph on

misdemeanor assault. We overrule Simmons's final point of error.

The trial court's judgment is affirmed.