

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00155-CR

_____

ROY BROWN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 11F0886-102

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Justice Carter

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

A jury convicted Roy Brown of continuous sexual abuse of a child and assessed a sentence of fifty years' imprisonment. The same jury also convicted Brown of sexual assault of a child and assessed a sentence of twenty years' imprisonment. On appeal, Brown argues that (1) there was a fatal variance between the indictment and the proof at trial, (2) the trial court erred in denying his motion for a directed verdict on the ground that the State failed to prove that Brown was over seventeen years old when he committed the alleged offenses, (3) the jury charge resulted in a possibility of a nonunanimous verdict because the evidence was insufficient to submit the charge, and (4) the trial court erred in (a) failing to allow him to question a juror who knew the victim's family and (b) failing to grant a new trial based on alleged juror impartiality.

We find that legally sufficient evidence supports the jury's verdict and that the trial court properly denied the motion for a directed verdict. We further find that Brown raises no actual complaint about the jury charge and that Brown failed to preserve his last point of error for our review. Accordingly, we affirm the trial court's judgment.

## I.      Legally Sufficient Evidence Supports the Jury's Findings of Guilt

In his first point of error, Brown argues that there was a fatal variance between the indictment and the proof at trial. Specifically, while the indictment for continuous sexual abuse of a child alleged that separate offenses occurred between September 2007 and April 2010, Brown argues that the proof at trial failed to establish when the alleged acts occurred.[1] We treat this point

---

[1]Brown argues that the jury heard evidence of offenses committed prior to September 1, 2007, the date on which the continuous sexual abuse statute became effective. He appears to argue that the jury must have included offenses committed prior to that date in determining guilt. However, the jury charge set forth the dates alleged in the State's

of error as a legal sufficiency point. *See Seiffert v. State*, 501 S.W.2d 124, 126 (Tex. Crim. App. 1973); *Holtz v. State*, 418 S.W.3d 651, 661 (Tex. App.—Texarkana 2009, pet. ref'd); *Simmons v. State*, 106 S.W.3d 756, 761 (Tex. App.—Texarkana 2003, no pet.).

### A.     Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict

---

indictment, and our legal sufficiency review omits events occurring prior to September 1, 2007. We further note that during Sally's questioning, the State emphasized, "So the indictment reads that the abuse started on or about September 1, 2007. . . . [T]hat, as a matter of fact, is the date that the law came into effect. So I couldn't charge him prior to that, and then September 1, 2007, to the day before your 14th birthday, that's the date we're talking about."

the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

The State's indictment for continuous sexual abuse of a child alleged that Brown

did then and there, during a period that was 30 or more days in duration, to-wit: from on or about <u>September 1, 2007 through April 1, 2010</u> when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [<u>Sally Land</u>] [2] a child, younger than 14 years of age, namely:

• Aggravated Sexual Assault of a Child (P.C.[3] 22.021) the defendant, did then and there intentionally or knowingly cause the <u>sexual organ</u> of [<u>Sally Land</u>], a child who was then and there younger than 14 years of age, to contact the <u>defendant's mouth</u>.
• Aggravated Sexual Assault of a Child (P.C. 22.021) the defendant, did then and there intentionally or knowingly cause the <u>sexual organ</u> of the defendant to contact the <u>sexual organ</u> of [<u>Sally Land</u>], a child who was then and there younger than 14 years of age.
• Aggravated Sexual Assault of a Child (P.C. 22.821) the defendant, did then and there intentionally or knowingly cause the penetration of the mouth of [<u>Sally Land</u>] a child who was then and there younger than 14 years of age, by the <u>sexual organ</u> of the defendant.
• Aggravated Sexual Assault of a Child (P.C. 22.021) the defendant did then and there intentionally or knowingly cause the <u>anus</u> of [<u>Sally Land</u>] a child who was then and there younger than 14 years of age, to contact the <u>sexual organ</u> of the defendant.
• Indecency with a Child by Sexual Contact (P.C. 21 11) the defendant, with the intent to arouse or gratify the sexual desire of said defendant, did intentionally or knowingly cause [<u>Sally Land</u>], to engage in sexual contact, by causing the said [<u>Sally Land</u>] to touch the <u>genitals of the defendant</u>. [4]

---

[2]We employ pseudonyms when referring to the victim and her immediate family members to protect the identity of "any person who was a minor at the time the offense was committed." TEX. R. APP. P. 9.10(a)(3).

[3]In this context, "P.C." is short for Penal Code.

[4]The State also filed a separate count alleging that Brown committed sexual assault of a child after Sally's fourteenth birthday.

4

**B.      The Evidence at Trial**

Sally's mother, Cassidy Land, testified that she had been dating Brown for nine or ten years when Sally made her August 7, 2010, outcry. On that day, Sally and Cassidy were at a family picnic while Brown was at a separate location meeting his friends. Cassidy testified that she was concerned about Sally and her teenaged cousins who appeared to be too boy crazy. To scare them, Cassidy told the girls that she could easily discern whether they were having sex by taking them all to the hospital for a medical examination. According to Cassidy, the threat of a medical examination prompted Sally to make allegations of sexual assault against Brown during the family picnic. Distraught, Cassidy called the police.

Chad Hilton, formerly an officer with the New Boston Police Department, testified that he spoke with Sally, who was fourteen years old at the time. According to Hilton, Sally said that Brown had been sexually assaulting her since she was five or six years old. Hilton testified that Sally's description of the abuse revealed that Brown penetrated her sexual organ with his sexual organ, forced Sally to place her mouth on his sexual organ, and placed his mouth on her sexual organ. According to Hilton, the acts of sexual abuse took place in the Bowie County home where Sally resided with Cassidy and Brown, while Cassidy was away at work.

Tonard Griffin, Cassidy's cousin and Brown's longtime friend, testified that he was with Brown on August 7, 2010. According to Griffin, Brown received a telephone call from Cassidy that left him in a "shocked[,] . . . frantic-like mode." Griffin testified that Brown fled the gathering with his friends and never returned any of Griffin's subsequent telephone calls. Griffin told the

5

jury that the first time he had seen Brown since Sally's outcry was on the day of his July 2016 trial.

Kathy Lach, a Sexual Assault Nurse Examiner (SANE), told the jury that, while she found no signs of trauma to Sally's body, Sally reported that she had been chronically sexually abused by Brown since she was five years old. Lach read the following portion of her report to the jury, which she testified were statements made by Sally during her examination:

> My mom wasn't home, and if I needed food or anything, I would have to earn it in a sexual way from my mom's boyfriend. I was about five or six when this first happened. It was usually in my room or my mom's and his room. He would take off his clothes and my clothes, and he would get on top of me and put his penis in my vagina. And sometimes he would go down to my vagina and start sucking all over it. Then he would make me suck his penis, and then he would put his penis in my vagina. And I would have to go back and forth on him. He told me not to tell. It happened in the car. He said he would have to go to the store, and he would take me with him. It was when I was 10 until I was about 13. And he would undo his pants, and I would have to lay over and suck on his penis, or he would be taking the back way to the store. I was afraid to tell my mom.

> In June 2010, in my room, he was in my room, and he took off his clothes. He took his clothes off, then my clothes off, and he put his penis in my vagina. Then he went down and sucked on my vagina, and he sucked on my boobs. And then he made me suck his penis and get on top and put his penis in my vagina and go back and forth. My mom thought I was having sex and told me she was going to get me checked out, and I knew I would have to tell her who was doing this. So I asked my cousin what I should do, and they said tell her.

Missy Davidson, a forensic interviewer with the Child Advocacy Center in Texarkana, Texas, testified that she discussed with Sally the sexual abuse she had suffered by Brown. As a result of the interview, Davidson opined that chronic sexual abuse was "almost just a normal . . . part" of Sally's life.

6

The evidence at trial established that Brown had quit his job at a local elementary school and was working for Pilgrim's Pride in a different city as a chicken "re-hanger" at the time of his arrest. John Morphew, another officer with the New Boston Police Department, testified that Brown was found and apprehended in Titus County, Texas, on October 21, 2011.

Amber Moss, the lead forensic scientist employed by the Texas Department of Public Safety Crime Laboratory in Garland, Texas, testified that she received specimens of Brown's DNA following his arrest. She compared Brown's DNA to samples of DNA found on Sally's bedding. According to Moss, Brown could not be excluded as a contributor of the DNA on Sally's bedding.

At trial, Sally, who was born in April 1996, said that Brown's abuse of her started when she was five or six years old. She testified that her oldest memories involved Brown "put[ting] his private area . . . on [her] vagina and back area," penetrating her sexual organ with his sexual organ, "us[ing] his mouth," on her and "touch[ing] on her and stuff like that." Sally explained that Brown required her to "earn" items she needed or wanted through performance of sexual acts. As an example, Sally testified that she would have to perform oral sex on Brown in order to earn food from restaurants.

Sally told the jury that Brown sexually abused her two to three times a week from the time she was five or six until she was fourteen. According to Sally, the abuse often included penetration of her sexual organ and involved either Brown or Sally "on top . . . and other positions." She testified that there were a few occasions when she would touch Brown's genitals and when Brown would "suck on [her] boobs." Sally testified that Brown put his mouth on her vagina one time before she was fourteen years old, and another time after her fourteenth birthday. She stated that,

7

while the abuse typically happened in the different rooms of the home, she was forced to perform oral sex on Brown while he was driving, on three or more separate occasions when she was twelve or thirteen years old. Sally told the jury that she was afraid to speak out because Brown had threatened to kill her and Cassidy if Sally ever made an outcry

Brown, who was fifty-one years old at the time of trial, testified in his defense. He emphatically denied every allegation of sexual abuse against Sally. Rejecting his defense, the jury found Brown guilty of one count of continuous sexual abuse of Sally when she was under fourteen years old and one count of sexual assault of Sally after her fourteenth birthday.[5]

### C. Analysis

Brown does not argue that the evidence was insufficient to establish that he sexually abused Sally. Instead, because the State's indictment alleged that the allegations forming the continuous sexual abuse charge occurred between September 1, 2007,[6] and April 1, 2010, Brown argues only that, while "the State elicited excruciating testimony concerning sexual abuse, . . . the testimony did not include specific or even approximate dates." We disagree.

"The Legislature . . . created the offense of continuous sexual abuse of a child in response to an expressed need to address sexual assaults against young children who are typically unable to

---

[5]In describing the last time she was abused by Brown after her fourteenth birthday, Sally testified, "I had to perform oral sex. I was on top. He was on top. He performed oral sex." She explained that she engaged in these acts in hopes of getting a new cell phone.

[6]The continuous sexual abuse statute became effective September 1, 2007. Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148. The State concedes that it cannot use acts occurring before the effective date of the statute to support Brown's conviction. *See Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd).

8

give precise dates when there are ongoing acts of sexual abuse." *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Section 21.02(d) further states, "If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d) (West Supp. 2016). Instead, the jury must agree "unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.*

The record establishes that Sally was eleven years old on September 1, 2007. Sally testified that Brown, on at least three separate occasions, made her perform oral sex while he was driving a vehicle, at a time when she was twelve or thirteen years old.[7] She also told the jury that Brown put his mouth on her vagina once before her fourteenth birthday. Although it is true that Sally omitted dates when describing other acts of sexual abuse, she told the jury that Brown had sex with her two to three times a week from September 1, 2007, until April 1, 2010. Davidson

---

[7]In a multifarious point, Brown appears to suggest that he may have driven into the neighboring county while committing this offense. He then argues that the State could not use those offenses to support the continuous sexual abuse count, which was alleged to have occurred in Bowie County. "As it is not a 'criminative fact,' venue is not an 'element of the offense' under Texas law." *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). "Furthermore, unlike elements of an offense that must be proven beyond a reasonable doubt under *Jackson*, the Texas Rules of Appellate Procedure permit appellate courts to presume that venue was proven unless venue is 'disputed in the trial court' or 'the record affirmatively shows the contrary.'" *Id.* at 35 (comparing and quoting TEX. R. APP. P. 44.2(c)(1) (permitting appellate presumption on proof of venue), with *Jackson*, 443 U.S. at 316 (noting Due Process Clause requires evidentiary review for sufficiency of proof "of every element of the offense")). Additionally, Brown's argument does not attack the venue of the offense of continuous sexual abuse, as it is undisputed that the remaining allegations comprising the offense occurred in Bowie County.

In any event, at trial, it was undisputed that Sally's home was located in Bowie County. Sally testified that Brown would take backroads, that she was not sure if they passed through DeKalb, Texas, and that the journey was "like going towards—it's a back way to my house." "Sexual assault may be prosecuted in the county in which it is committed, in the county in which the victim is abducted, or in any county through or into which the victim is transported in the course of the abduction and sexual assault." TEX. CODE CRIM. PROC. ANN. art. 13.15 (West 2015).

9

also testified that her interview with Sally led her to believe that Sally was chronically sexually abused by Brown.

We conclude that the evidence presented at trial was legally sufficient to support the jury's finding that Brown, during a period of thirty or more days in duration, committed two or more acts of sexual abuse against Sally, within the timeframe contained in the State's indictment. Accordingly, we overrule Brown's first point of error.

## II.     Directed Verdict Was Properly Overruled

After the State rested, Brown moved for a directed verdict. Although Brown articulated no specific reason for the motion during trial, he argues on appeal that the trial court erred in failing to grant his motion for the sole reason that the evidence was insufficient to establish, at that point in the trial, that Brown was over the age of seventeen at the time the acts against Sally were committed.[8]

The jury heard testimony that Sally's mother started dating Brown in 1998, when Sally was two years old. By the time of Brown's 2016 trial, Sally was twenty years old. The jury also heard that Brown was driving when Sally was twelve or thirteen years old, and that he had been employed by a local school district prior to 2010 as a janitorial worker and then as a teacher's aide for "some time." Further, Brown was present in the courtroom and was identified by several witnesses as the alleged perpetrator of the crimes. The testimony from Sally and her mother, coupled with Brown's appearance in the courtroom and the in-court identifications, allowed a

---

[8]The standard of review applicable to a motion for directed verdict is the same used under a legal sufficiency review. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Havard v. State*, 800 S.W.2d 195, 199 (Tex. Crim. App. 1989).

rational jury to reasonably conclude that Brown was over seventeen years old at the time of the offenses alleged in the State's indictment. *See Dorsett v. State*, 396 S.W.2d 115, 116 (Tex. Crim. App. 1965) (a jury may compare its in-court observation of a defendant to either a photograph or a description of a perpetrator to support the element of identity); *see also Adams v. State*, 418 S.W.3d 803, 811 (Tex. App.—Texarkana 2013, pet. ref'd).[9]

We find that the trial court properly denied Brown's motion for directed verdict. Accordingly, we overrule Brown's second point of error.

## III.     There Was No Error in the Jury Charge

Brown correctly recites that the jury charge for continuous sexual abuse does not require a jury to "agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d). Yet, Brown argues that the trial court's jury charge for continuous sexual abuse allowed for a nonunanimous verdict.

Brown recited the language of the trial court's jury charge in his briefing, but failed to argue that any portion of the charge was erroneous. Instead, Brown argues that the jury charge was erroneous because the evidence was not legally sufficient. We have already concluded that legally sufficient evidence supported the jury's verdict of guilt for continuous sexual abuse.

---

[9]"[A] jury need not leave its common sense at the door when determining whether a person is guilty." *Ramsey v. State*, 473 S.W.3d 805, 809 n.4 (Tex. Crim. App. 2015) (citing *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014)).

11

Because Brown fails to raise a specific complaint about the jury charge itself, we overrule his third point of error.

## IV.    Brown Failed to Preserve His Last Point of Error

In his last point of error, Brown argues that the trial court should have granted him a new trial when it learned that a juror knew Sally's family and, alternatively, that the court should have allowed Brown to question the juror. He further argues that the trial court's failure to take these actions was harmful because it allegedly resulted in an impartial jury. The State argues that Brown has failed to preserve this issue for appeal. We agree.

During voir dire, the State asked the venire whether anyone knew Sally or Cassidy. Juror Tomeka Wherry did not raise her hand in response to that query. Yet, in the middle of trial, after Lach's testimony, defense counsel told the trial court that Brown's family stated that Wherry knew Sally's family very well. Brown's counsel asked the court to speak with Wherry. The trial court then engaged in an off-the-record discussion with Wherry to ascertain the nature of her relationship with Sally's family. At no point did Brown object to the trial court's procedure, move for a new trial, or otherwise indicate that he would like to be present during the questioning. When the trial court returned, it made the following statement:

> I got Ms. Wherry into the witness room, as I call it, right next door, and just she and I in there. And I asked her if she knew the victim's family, and she said that she might have known a grandson; but she wasn't real sure. She said she doesn't know any of them by their name. She said she worked at Wal-Mart for a long time. She said I recognize some of those faces, but she said when they asked me that yesterday, she said I didn't recognize any of the names. She said I don't know them. And then the final thing I asked her, I said, well, let's just pretend for a second that you did know them, is it the kind of thing you can put aside. She said yes, but she assured me she didn't know them that well.

12

Brown thanked the trial court for its report, and the trial continued without any further objection or argument on behalf of Brown.

As a general rule, a defendant must make a timely and specific objection to preserve error for appellate review. TEX. R. APP. P. 33.1(a). Because Brown failed to either move the trial court for a new trial or ask that he be allowed to question the juror, error is not preserved.[10] Consequently, we overrule Brown's last point of error on appeal.

## V. Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     May 31, 2017
Date Decided:      July 20, 2017

Do Not Publish

---

[10]In support of his position that the trial court should have granted him a new trial based on a juror's withheld information, Brown cited to *Franklin v. State*, 138 S.W.3d 351 (Tex. Crim. App. 2004, and *Salazar v. State*, 562 S.W.2d 480 (Tex. Crim. App. 1978). A review of both cases, however, reveals that the defendants therein properly preserved the issue. *Franklin*, 138 S.W.3d at 352 (noting that the defendant moved for mistrial and objecting to the trial court's refusal to allow additional questioning of the juror); *Salazar*, 562 S.W.2d at 482 (noting that defendant timely filed bills of exception arguing that mistrial was required due to false information given by a juror).

Further, Brown does not argue that there was fundamental error or structural error which removed the need for error preservation. "[T]he right to trial by impartial jury, like any other right, is subject to waiver." *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008); *see Delrio v. State*, 840 S.W.2d 443, 445 (Tex. Crim. App. 1992) ("[W]e have not held . . . that an impartial jury is an inflexible constitutional imperative which cannot be procedurally defaulted or consciously waived. Rather, we have recognized it to be a right of the accused, which must be pressed in some fashion at trial before reversal of his conviction may be predicated upon its breach."); *Gillum v. State*, 888 S.W.2d 281, 286 (Tex. App.—El Paso1994, writ ref'd) (refusing to consider whether presence of juror who withheld material information during voir dire violated appellant's constitutional rights to an impartial jury, because appellant did not object to the presence of the juror on any of those grounds and, therefore, failed to preserve them for appeal).

13